MAXWELL v. AKIN et al.

(Circuit Court, D. Oregon. August 25, 1898.)

No. 2,432.

1. CORPORATIONS—PURPOSES OF INCORPORATION—CONSTRUCTION OF STATUTE.
In the general incorporation statutes of Oregon, which authorize the formation of corporations "for the purpose of engaging in any lawful

enterprise, business, pursuit or occupation," the words "business" and "pursuit" are not restricted in meaning to schemes for making money. but include any object consistent with the interests of society that may engage the attention of men and invite their co-operation; and a corporation may lawfully be organized under such statute for the purpose of guarantying the bonds of an educational institution, to strengthen its credit.

2. SAME—POWERS—ESTOPPEL OF STOCKHOLDERS TO DENY.

Stockholders in a corporation which was formed for the purpose of becoming guarantor of certain bonds and obligations of a third party, and which assumed to become such guarantor, are estopped, as against purchasers of such bonds, to deny the power of the corporation to incur obligations in that manner.

3. SAME—ASSESSMENTS ON STOCKHOLDERS—POWERS OF RECEIVER.

The powers of the board of directors of a corporation to make assessments against the stockholders upon their subscriptions pass to a receiver, who may act when the board fails or refuses to do so.

Snow & McCamant and Richard W. Montague, for plaintiff.

M. L. Pipes, W. D. Fenton, H. M. Cake, H. B. Nicholas, G. G. Willis, W. Y. Masters, J. H. Woodward, W. A. Cleland, and Lionel R. Webster, for defendants.

BELLINGER, District Judge. This is an action by the receiver to collect subscriptions made to the capital stock of the Portland Guaranty Company. The object for which this company was organized is thus set forth in its articles of incorporation:

"Article Second. The business in which this corporation proposes to engage is the guarantying and securing the notes, bonds, and other obligations of the Portland University, a corporation recently incorporated at Portland, Oregon, for educational purposes, in order to increase the credit of said Portland University, so as to enable it to obtain money and other property with which to effect the objects of its incorporation, and to that end to acquire, hold, plat, mortgage, and convey both real and personal property."

It is alleged, in effect, that the Portland University issued more than $200,000 of negotiable bonds, and to secure the same caused a trust deed of its property to be executed to the Portland Guaranty Company, and that thereupon the Portland Guaranty Company indorsed on the bonds in writing its guaranty as follows:

"The Portland Guaranty Company, a corporation created and existing under and by virtue of the laws of the state of Oregon, the payee within named, for value received hereby assigns this bond to the bearer, and guaranties the payment thereof, and of the interest coupons thereto annexed."

The subscribers to the stock of the guaranty company seek to avoid liability on the ground that the laws of Oregon do not authorize the incorporation of such a company, and that the obligations alleged to have been incurred by the guaranty company, and for the discharge of which the stock subscriptions are sought to be collected, are not obligations which the guaranty company could create; that as to this, assuming that the guaranty company is lawfully organized, it has only power to guaranty obligations which have been first authorized by the Portland University by acquiring, holding, platting, mortgaging, and conveying both real and personal property. In other words, the contention is that at most the guaranty company can only become responsible as a guarantor to the extent and for the proper admin-

istration of the property conveyed to it by the Portland University for such purpose.

The statutes of Oregon authorize the formation of corporations for the purpose of engaging in any lawful enterprise, business, pursuit, or occupation; and it is argued that the guarantying gratuitously of the bonds of another corporation is not an "enterprise," "business," "pursuit," or "occupation"; that there can be no such thing as an "enterprise," "business," etc., by a corporation that does not contemplate dividends to its stockholders. The statutes also provide for the incorporation of religious, benevolent, literary, or charitable societies, or any societies having for their object the development of the physical or mental capacities of their members; and, when any such society is incorporated, it is required, among other things, to state in its articles of incorporation the "object," "business," or "pursuit" of said corporation. So the words "business" and "pursuit," as used in the statute, are not restricted to schemes for making money; nor is it to be assumed from this statute that every business and pursuit not of that character is intended to be classed as religious, benevolent, literary, etc. A business of this specific character may be incorporated under the statute for the incorporation of churches and societies, ar a business not of this specific character may be incorporated under the general incorporation act. Taken together, these acts show that the words "business" and "pursuit" are used with reference to any object consistent with the interests of society that may engage the attention of men and invite their co-operation. Unless there is a manifest purpose in the statute in question to use the words "business," "enterprise," "pursuit," as mere dividend producing schemes, they ought not to be given such an interpretation. It is obviously to the public interest that men shall be encouraged to adopt, as far as practicable, higher ideals in their pursuits than those based upon mere money returns. Furthermore, there is nothing in the present case to warrant the assumption that the guarantying of the bonds and notes of the Portland University was intended by the guaranty company or its stockholders to be a gratuitous act. These two corporations were manifestly allied in a common enterprise. But, however this may be, the fact that the guaranty company's interest in what was done does not appear does not raise a presumption that it acted gratuitously. I am of the opinion that whatever engagements men may make as individuals they may make, under the incorporation law of this state, as an association of individuals, and that the clause, "and to that end to acquire, hold, plat, mortgage, and convey both real and personal property," contained in article 2 of the articles of incorporation of the guaranty company, is not a limitation of the power of the company, but is intended to confer upon it power to deal with real estate in furtherance of the object of its incorporation. Furthermore, these stockholders are estopped to deny liability. They have assumed, through their organization, the authority to do what has been done. The corporation is in fact the stockholders acting together as an association. If as individuals they had guarantied the notes of another, and by that means had induced third persons to invest their money in such obligations, an attempt to escape the liability thus assumed

would not be thought of.    There is no reason in morals or law why their obligations assumed through corporate action should not be equally binding.    If they have assumed unwarranted corporate power, it is the state that is injured.    It is not for them to take advantage of their own wrong to escape the obligations for which they incorporated themselves, and which they formally assumed, and in consideration of which the holders of these notes and bonds invested their money.    "A party, individual or collective, which holds itself out as a corporation, acts as such in making a contract, and promises in a corporate name, may be sued on the contract and charged in that name, and will not be heard to deny the corporate character which it has thus assumed.    This estoppel operates in favor of persons who have given credit to the assumed corporation, or otherwise changed possession to their loss, upon the faith of its being what it purports to be, as against those who by their active conduct have held it out to the world as a corporation.    It therefore estops promoters, directors, and stockholders from denying the fact of the existence of the corporation when proceeded against to charge them upon the assumption of its existence, and of their connection with it as such."    Thomp. Corp. §§ 7650, 7651.    The cases of Thomas v. Railroad Co., 101 U. S. 82, and Oregon Ry. & Nav. Co. v. Oregonian Ry. Co., 130 U. S. 22, 9 Sup. Ct. 409, and similar cases cited in support of the demurrer, are cases where the unexecuted contracts of corporations without their powers were set aside.    It was not held or contended in these cases that the defendants could keep or enjoy the use of property taken under an ultra vires contract, and refuse to pay the consideration agreed to be paid.    It is only where the party repudiating the contract pays for what it has had, and returns the property taken under the invalid agreement, that the other party will be refused relief.    "The principle, properly understood and applied, extends to every case where the consideration of the contract has passed to the corporation from the other contracting party, which consideration may, on well-understood principles, consist either of a benefit to the corporation, or of a prejudice or disadvantage to the other contracting party.    It is therefore not strictly necessary to the proper application of the principle that the corporation has received a benefit from the contract, but it is sufficient that the other party has acted on the faith of it to his disadvantage,—as where he has expended money on the faith of it.    The reason of the rule is that honesty and fair dealing are the highest public policy, and that a private corporation, which is a mere collection of individuals, is no more privileged to repudiate its engagements and act dishonestly than a single individual is."    Thomp. Corp. § 6017.    The power possessed by the board of directors to levy and collect assessments is vested in the receiver, who may act when the board fails or refuses, as in this case, to do so.    The demurrer is overruled.