(March 3, 1916.)

FIRST NATIONAL BANK OF WALLACE, a Corporation, Respondent, v. CALLAHAN MINING COMPANY, a Corporation, Appellant, and FRANCIS C. BOUTIN, JOHN H. ROBBERS and A. L. RILEY, Respondents.

[155 Pac. 673.]

Mining Company—Sale of Treasury Stock—Escrow—Action by—Interpleader—Judgment on Pleadings—Divisibility of Contract—Ultra Vires.

1. Where a mining company enters into a contract with other parties for the sale of mining stock and an escrow agreement is entered into whereby the stock and agreements are deposited with a bank and a controversy arises between the parties to the contract and escrow agreement as to what shall be done with the stock and the cash paid for the stock, the depositary may bring an action to require the adverse parties to interplead, and upon proper allegations the court may permit the escrow to turn such stock and money into the hands of the court and thus relieve the escrow holder from further responsibility.

2. The motion for judgment on the pleadings admits all of the material allegations of the complaint and the answer which are well plead, where such answer is by an adverse party to the one making the motion.

3. A denial on information and belief when the truth of the allegations attempted to be denied may be easily or readily obtained by the defendants, is not sufficient.

[As to denials on information and belief, see note in 133 Am. St. 106.]

4. *Held*, that the only question presented for decision on motion for judgment on the pleadings was whether the contract for the sale of said treasury stock was *ultra vires*.

5. Where a contract for the purchase of mining stock is entered into and the purchasers agree thereby to pay for such stock at stated periods of time, and the escrow holder is authorized to receive such payment and deliver the stock to the purchasers when paid for, and all payments for such stock are made in accordance with the contract, and the contract contains other provisions in favor of the purchasers which permit them to name the secretary and the treasurer of such corporation whenever the income or net profits of the mining company shall be sufficient to warrant the

payment of a salary to such officer, and also permit the purchasers to name one director of such corporation, and it is also agreed that the net profits shall be divided in certain proportionate shares, *held*, that such provisions of the contract are divisible, and that the provision for the sale of such stock may be separated from the other provisions thereof, and that the covenants for the sale of the stock are not *ultra vires* and void, and that since the other provisions or covenants are made for the benefit of the purchasers, they may waive them.

6. Upon the payment for said stock according to the terms of the contract, the purchasers were entitled to the delivery thereof, and if delivery was refused, they may enforce delivery by an action in court.

7. After the payment for said stock had been made, the bank's possession of said stock was the possession of the purchasers.

8. Where by the terms of a contract the time to perform the covenants on the one side is to arrive or may arrive before the performance of the covenants on the other, the former is not dependent upon the latter.

9. The doctrine of *ultra vires* when invoked for or against a corporation should not be allowed to prevail where it would defeat the ends of justice or work a legal wrong. In such a case the party is estopped from setting up the defense of *ultra vires*.

10. *Held*, under the facts of this case that the appellant must pay interest on all dividends which have been turned into the court from the date of their payment to the clerk to the date of their payment over to Riley and Robbers or their assigns.

APPEAL from the District Court of the First Judicial District for Shoshone County. Hon. Wm. W. Woods, Judge.

Action to enforce the delivery to the purchasers of certain mining stock for which they had paid. Judgment for the interpleaders Riley and Robbers, who are respondents.

*Affirmed.*

John P. Gray and J. E. Gyde, for Appellant.

By their motion for judgment upon the pleadings, respondents Robbers and Riley admit the truth of all of the allegations of the complaint of the bank and the allegations of the answer of the defendants Callahan Mining Company and Francis C. Boutin. (*Walling v. Bown,* 9 Ida. 184, 72 Pac.

960; *Mills Novelty Co. v. Dunbar*, 11 Ida. 671, 83 Pac. 932; *Idaho Placer Min. Co. v. Green*, 14 Ida. 294, 94 Pac. 161; *Davenport v. Burke*, 27 Ida. 464, 149 Pac. 511.)

The entire agreement between the mining company and Robbers and Riley is invalid and unlawful.

"When powers involving the exercise of judgment and discretion are vested in the directors or trustees, they cannot delegate the same unless expressly or impliedly authorized to do so." (Clark & Marshall on Corporations, sec. 731; *Flagstaff Silver Min. Co. v. Patrick*, 2 Utah, 304; *Glass v. Basin & Bay State Min. Co.*, 31 Mont. 21, 77 Pac. 302; *Trustees of Auburn Academy v. Strong*, 1 Hopk. Ch. (N. Y.) 278; *West v. Camden*, 135 U. S. 507, 10 Sup. Ct. 838, 34 L. ed. 254; *Jackson v. Hooper*, 76 N. J. Eq. 592, 75 Atl. 568, 27 L. R. A., N. S., 658; *Gage v. Fisher*, 5 N. D. 297, 65 N. W. 809, 31 L. R. A. 557; Elliott on Contracts, sec. 749, and cases cited in note.)

The contract provides for a distribution of the profits as they accrue, without action by the board of directors. Such provision of the contract is clearly illegal as against public policy. (*Beveridge v. New York El. R. Co.*, 112 N. Y. 1, 19 N. E. 489, 2 L. R. A. 648.)

The obligations undertaken by the mining company are all for one consideration, namely, the payment of the purchase price of the stock by Robbers and Riley. These conditions are interdependent.

"Where the consideration of a contract consists of several different elements and no apportionment or separate valuation or means of apportionment or valuation of the different elements of the consideration is made by the parties, the entire contract will be held illegal, if one of the elements of the consideration is immoral or against public policy." (15 Am. & Eng. Ency. 989; *More v. Bonnet*, 40 Cal. 251, 6 Am. Rep. 621; Elliott on Contracts, new ed., sec. 1077; *Bettini v. Gye*, 1 Q. B. Div. 187; *Straus v. Yeager*, 48 Ind. App. 448, 93 N. E. 877; *Sterling v. Gregory*, 149 Cal. 117, 85 Pac. 305; *Co-operative Tel. Co. v. Katus*, 140 Mich. 367, 112 Am. St. 414, 103 N. W. 814.)

J. H. Wourms, Jas. A. Wayne and C. W. Beale, for Respondents.

"Upon performance of the condition the grantee or obligee is entitled to delivery, which will be enforced by a decree of court. Where a condition which was in favor of the grantee was not performed, he may waive it and enforce delivery. If the depositary refuses to deliver, the remedy is not against the other party to compel specific performance of the escrow contract, but against the depositary to obtain possession of the instrument." (16 Cyc. 585.)

"Where an instrument has been placed in escrow, the transaction constitutes a contract between the parties, and such contract cannot be rescinded by the depositor alone. He cannot withdraw the escrow from the hands of the depositary at his will and without the consent of the other party, or without default in the performance of the conditions." (2 Am. & Eng. Ency. Law, 2d ed., 344; *Cannon v. Handley,* 72 Cal. 133, 13 Pac. 315, 318; *McDonald v. Huff,* 77 Cal. 279, 19 Pac. 499.)

"Where the acts are stipulated to be done at different times the covenants are to be construed as independent of each other." · (*Goldsborough v. Orr,* 21 U. S. (8 Wheat.) 217, 5 L. ed. 600; *Straus v. Yeager,* 48 Ind. App. 448, 93 N. E. 877; *Edgerton v. Power,* 18 Mont. 350, 45 Pac. 204; 9 Cyc. 642.) Robbers and Riley having fully complied with the terms and covenants of their agreement, and the appellant company having received the benefits thereof, it is estopped from denying its right to contract and from invoking the doctrine and plea of *ultra vires.*

"Corporations are presumed to contract within their powers. The doctrine of *ultra vires,* when invoked for or against a corporation, should not be allowed to prevail where it would defeat the ends of justice or work a legal wrong." (*Ohio & Miss. Ry. Co. v. McCarthy,* 96 U. S. 258, 267, 24 L. ed. 693, 696; *Whitney Arms Co. v. Barlow,* 63 N. Y. 62, 20 Am. Rep. 504; *Burke Land etc. Co. v. Wells, Fargo & Co.,* 7 Ida. 42, 61, 60 Pac. 87; *Fremont County v. Warner,* 7 Ida. 367, 63 Pac. 106.)

SULLIVAN, C. J.—This action was brought by the First National Bank of Wallace, Idaho, a corporation, against the Callahan Mining Company, Francis C. Boutin, John H. Robbers and A. L. Riley, for the purpose of relieving the bank of responsibility for certain funds deposited in said bank and certain mining stock deposited in said bank under an escrow agreement, and to permit said bank to deposit with the court about $71,982.32 in cash and 176,000 shares of treasury stock of the Callahan Mining Company, over all of which there is a controversy between said defendants.

The defendants Riley and Robbers demurred to the complaint and the defendants Callahan Mining Company and Francis C. Boutin answered. Under the proceedings that followed, the bank was authorized to bring into court and deposit with the clerk thereof the said sum of cash and the 176,000 shares of the capital stock and upon doing that the bank was to be discharged of all liability to the defendants, and by said judgment of the court the defendants were respectively required to interplead in the action and litigate among themselves the claims of each to said money and stock.

The Callahan Mining Company and Boutin answered and the defendants Riley and Robbers demurred to the complaint on several grounds, and also moved for judgment on the pleadings. After hearing said motion for judgment on the pleadings, the court sustained said motion and entered judgment in favor of Riley and Robbers, wherein it was adjudged that said 176,000 shares of the capital stock of the Callahan Mining Company were adjudged to be the property of the defendants Riley and Robbers, and in said judgment it was ordered that the clerk of the court, immediately after the judgment, turn over to said Riley and Robbers said shares of stock, and it was also adjudged that all dividends declared or to be declared upon the said 176,000 shares of stock be paid to the said Riley and Robbers or their successors and assigns.

A stay of proceedings was granted for ten days from June 14, 1915. Thereafter on June 19, 1915, a *supersedeas* bond of $25,000 was fixed by the court in case an appeal was taken, and if no appeal was taken, the dividends were to be paid to

Riley and Robbers. An appeal was taken and an order was made that in the event any dividends were paid by the Callahan Mining Company pending the final determination of this action, that the dividends on the said 176,000 shares of stock be paid into court and be held pending the final determination of the action. It was further ordered that all moneys then on deposit in the court in said action over and above the sum of $44,000 be returned to the defendant, the Callahan Mining Company, and that said $44,000 remain upon deposit in the court subject to the final determination of the appeal. An appeal was taken from said judgment by the mining company. Defendant Francis C. Boutin did not appeal.

Appellant assigns two errors: First, that the court erred in sustaining the motion of Riley and Robbers for judgment on the pleadings; and, second, for adjudging and decreeing Riley and Robbers to be the owners of the 176,000 shares of the capital stock of said mining company, and directing the same to be delivered to said Riley and Robbers.

The following facts appear from the record:

A contract was entered into by the defendants Riley and Robbers with the Callahan Mining Company for the purchase of 400,000 shares of the treasury stock of said mining company, at an agreed price of twenty-five cents per share, which contract is as follows:

"This agreement made and entered into this 19th day of September, A. D. 1910, by and between Callahan Mining Company, a Corporation duly organized and existing under and by virtue of the laws of the State of Idaho, and having its principal place of business in the City of Wallace, County of Shoshone and State of Idaho, the party of the first part, and A. L. Riley of the City of St. Cloud, Minnesota, and John H. Robbers of Duluth, Minnesota, the parties of the second part,

"Witnesseth: That the said party of the first part agree to sell unto the said parties of the second part, and the said parties of the second part agree to purchase from the said party of the first part, Four Hundred Thousand shares of the Treasury stock of the said party of the first part, at

twenty-five cents per share, payments to be made as follows, to wit:

"Five Thousand Dollars to be paid at the time of the signing and sealing of these presents, the receipt whereof is hereby acknowledged, and the balance of the said purchase price to be paid at the rate of not less than One Thousand Dollars per month beginning with the first day of December, A. D. 1910, stock to be delivered to the said parties of the second part at times payments are made, in proportion to amount paid at the rate of twenty-five cents per share. The parties of the second part may, at their option, at any time pay a greater sum than One Thousand Dollars, and in the event of such greater payment, if there should remain in the treasury of the corporation on the first of the next succeeding [month], the sum of One Thousand Dollars or more unexpended, the said parties of the second part shall not be obliged to make the One Thousand Dollar payment, but shall be relieved from making the monthly payments of One Thousand Dollars, until such time as the reserve in the Treasury of the corporation shall be below the sum of One Thousand Dollars.

"In consideration of the covenants and agreements of the said parties of the second part hereinbefore more specifically set forth the said party of the first part, agrees, immediately upon the signing of this agreement to place in escrow with the First National Bank of Wallace, Idaho, the stock hereinbefore mentioned subject to the payments hereinbefore provided for.

"The said party of the first part further agrees that at any time that the business of the said party of the first part may warrant the payment of a salary to the Secretary and Treasurer of the said party of the first part, that the said party of the first part will elect to the said offices of Secretary and Treasurer such person or persons as the said parties of the second part may nominate.

"It is mutually agreed that such net profits, as may accrue from the ore and minerals which may be extracted from the property belonging to the said party of the first part during the time any of the stock placed in escrow remains there, shall

be divided into two sums, one sum proportionate in amount to the stock held by the owners thereof, and the other proportionate in amount to the stock which at such time shall still remain in escrow, and the said first amount shall immediately be placed in the said First National Bank of Wallace, Idaho, to the credit of the several stockholders in proportion to the number of shares owned by them as shown by the books of said party of the first part, and the said second sum shall be kept by said bank in a separate fund, and from time to time, as stock is delivered under and in accordance with the terms of this agreement, the said bank at the time of delivery of any such stock shall pay from said fund to the party to whom said stock is delivered the same proportion of said fund as the shares of stock then delivered from said escrow bears to the total number of shares still remaining in escrow, the intention being that all of the said stock, whether held independently by the owner thereof or remaining in escrow shall share proportionately in such net profits as may accrue, but that the payment of the proportion of said amount upon stock held in escrow shall follow the delivery of the stock and shall be postponed and made only from time to time as stock is delivered.

"It is mutually agreed that at the time of the making of said first payment the said first party will elect one of the said parties of the second part or such person as they may nominate a member of the Board of Directors of the said party of the first part.

"This agreement is intended as an option and it is mutually agreed that should the said parties of the second part fail to comply with the terms of this agreement, then and in that event all the rights of the said parties of the second part, shall be terminated and at an end at the option of the said party of the first part.

"All the rights, privileges and obligations of this agreement shall extend to and be binding upon the heirs, assigns and successors of the parties hereto.

"In witness whereof the said party of the first part, by resolution of the Board of Directors has caused these presents to be signed by its President and attested by its Secretary

under the corporate seal of the said party of the first part and the said parties of the second part have hereunto set their hands and seals this the day and year first above written."

In pursuance of said contract said 400,000 shares of stock was placed in escrow with the First National Bank of Wallace under written directions of the contracting parties, which are as follows:

"To the First National Bank of Wallace, Idaho.

"You are authorized to deliver the within certificates of stock of the Callahan Mining Company to John H. Robbers and A. L. Riley, their agent or order upon payment to us, or deposit to our credit of the sum of One Hundred Thousand Dollars, as follows, to wit: Five Thousand Dollars on or before the 19th day of September, A. D. 1910, and the balance at the rate of not less than One Thousand Dollars per month on the first day of each and every month beginning with the first day of December, A. D. 1910, the said Robbers and Riley however to have stock equal to the amount of any payment made by them at the rate of twenty-five cents per share at the time of payment as provided in a contract a copy of which is hereto annexed and made a part of this escrow.

"The Callahan Mining Company shall have power to withdraw certificate of stock for the purpose of cutting the same into certificates of denominations as may be necessary to make delivery of stock to the said Robbers and Riley or to their order as payments are made.

"Signed and Sealed at Wallace, Idaho, this the 19th day of September, A. D. 1910.

(Seal)          "CALLAHAN MINING COMPANY,
                      "By JAMES F. CALLAHAN,
                                          "President.
                    "A. L. RILEY,          (Seal)
                    "JOHN H. ROBBERS.   (Seal)
     "Witness:
          "JOHN H. WOURMS."

(1) It is contended by counsel for appellant that by respondents' motion for judgment on the pleadings, Riley and

Robbers admitted the truth of all the allegations of the complaint of the bank and the allegations in the answer of the Callahan Mining Company and Francis C. Boutin. That contention is correct, as a rule, when applied to all facts well pleaded, but when all of the allegations of the complaint of the bank and the answer of the appellant mining company and of Francis C. Boutin are taken into consideration, it clearly appears that the only defense the mining company has is whether the said agreement for the sale of the stock was *ultra vires*. Certain allegations of the complaint were denied on information and belief. Such denials are not sufficient when the truth of the allegations may be easily and readily obtained by the answering defendants. The trial court properly decided the motion for judgment on the pleadings upon the question as to whether said agreement for the sale of said treasury stock was *ultra vires*. That was the only defense that was necessary for the court to determine upon the decision of said motion. The mining company by its answer admitted the execution of said agreement but averred that the same was *ultra vires*.

It clearly appears from the pleadings that respondents Riley and Robbers and the mining company under said agreement deposited with the bank certificates representing 400,000 shares of the company's capital stock to be delivered by the bank to Riley and Robbers upon their payment to the bank of $100,000 within the specified time; that they made the payments as provided by said contract. While the mining company attempts to deny the payments on information and belief, the denial is clearly insufficient, and, as before stated, the only question presented for decision upon the motion for judgment on the pleadings was whether said contract was *ultra vires* or not. There is nothing in the contention of plaintiff that the court erred in granting said motion and in entering judgment on the pleadings.

It is conceded that Riley and Robbers paid for said stock according to the terms of said contract, and certificates representing 224,000 shares of the 400,000 shares of stock were delivered to them, and that when the payment was made for

the 176,000 shares of stock the bank refused to deliver certificates therefor to them because of written notice having been served on the bank by the Callahan Mining Company forbidding the bank to deliver the same to them, on the ground that said contract of sale was *ultra vires* and void.

(2) A controversy had arisen between the mining company and Riley and Robbers over the removal of defendant Robbers and the election of Francis C. Boutin as secretary and treasurer of said corporation, and Riley and Robbers thereafter notified the bank not to honor any checks drawn by said Francis C. Boutin upon the funds of said mining company on deposit in said bank.

The main contention of appellant is that said entire contract or agreement for the purchase of said shares of stock is *ultra vires,* for the reason, first, that it contains a clause whereby said mining company agreed that at any time the business of said company would warrant the payment of a salary to the secretary and treasurer of said mining company, that it would elect to those offices such person or persons as the said Riley and Robbers might nominate; second, that it is therein agreed that the net profits of the mining company shall be divided into two sums, one sum proportionate in amount to the stock held by the owners thereof, and the other proportionate in amount to the stock which at such time shall still remain in escrow; and it is argued that it was unlawful and *ultra vires* for said corporation to agree to permit Riley and Robbers to select the person to be elected secretary and treasurer of said corporation, since the law of Idaho specifically provides that these officers shall be elected by the board of directors, and that it was unlawful for said corporation to agree to distribute the net profits, since the power to declare dividends lies solely with the board of directors.

Counsel for appellant then proceeds to argue that said agreement or contract for the purchase of said treasury stock is entire and indivisible, and the legal and illegal parts thereof cannot be separated or divided, since each and all of its parts, material provisions and considerations are common to each other and interdependent.

We are unable to agree with that contention. The main object and purpose of said contract was the sale and purchase of said 400,000 shares of treasury stock, and the other provisions in regard to Riley and Robbers selecting a person for secretary and treasurer and a member of the board of directors were intended for their advantage and benefit, and are no part of the consideration to be given by them to the mining company for said stock. The purchase of said stock was in no manner dependent upon the provisions just referred to. Those provisions are in favor of Riley and Robbers, and they may waive them and enforce the delivery of said stock.

It is stated in 16 Cyc. 585 as follows:

"Upon performance of the condition the grantee or obligee is entitled to delivery, which will be enforced by a decree of court. Where a condition which was in favor of the grantee was not performed, he may waive it and enforce delivery. If the depositary refuses to deliver, the remedy is not against the other party to compel specific performance of the escrow contract, but against the depositary to obtain possession of the instrument."

The condition of said contract requiring Riley and Robbers to pay twenty-five cents a share for said 176,000 shares of stock has been performed, and it is stipulated in said contract that when payment has been made, the bank should deliver said shares to them. The bank became the custodian of Riley and Robbers after full payment and the bank's possession as escrow holder was the possession of Riley and Robbers. (See *Cannon v. Handley,* 72 Cal. 133, 13 Pac. 315.) Riley and Robbers having made final payment for said stock in accordance with the provisions of said contract on the 2d of March, 1915, the possession of the depositary, the bank, then became the possession of Riley and Robbers, and the mining company thereafter would not be justified in attempting to set aside and nullify said sale on the ground that said contract contains some illegal provisions. It will be time for the mining company to do that when Riley and Robbers undertake to enforce those provisions of the contract claimed to be *ultra vires.* It certainly will not be contended that the

enforcement of the provisions of the contract referred to would be for the benefit of the mining company and the Boutins, for the reason that those provisions are in favor of Riley and Robbers.   Those provisions permitting Riley and Robbers to select the secretary and treasurer are dependent upon the business or income of the mining company being sufficient to warrant the payment of a salary to such officer. That condition might never arise, while the payments to be made for said stock by Riley and Robbers were fixed at definite times.   Riley and Robbers were required to deposit the money in the bank within a specified time, and when they paid the money the certificates of stock were to be delivered to them.   It was not intended that such payments were to be postponed until the time when the business of the company would warrant the payment of a salary to the secretary and treasurer, or until the operation of the mines would result in net profits.   Where by the terms of a contract the time to perform the covenants, on the one side, is to arrive or may arrive before the performance of the covenants on the other, the former is not dependent on the latter.   (9 Cyc. 642.) Upon final payment being made as per the provisions of said contract, Riley and Robbers were entitled to the delivery of said stock certificates, and the payments for, and the delivery of, them were in no manner dependent upon the other provisions of said contract.

It was contended by counsel for respondents Riley and Robbers in their oral argument and in their brief that respondents waived the terms of said agreement relative to their naming a secretary-treasurer or director of said mining company, and all other covenants thereof in their favor other than the delivery to them of said stock, in the trial court, and counsel also made the same waiver in this court.   This waiver was not denied by counsel for appellant in their brief or in their oral argument before this court.   However, if Riley and Robbers should undertake to enforce said provisions, the appellant would have the right to defend on the ground that said provisions were unlawful and *ultra vires.*

It is clear from the provisions of said contract that the only inducement for the mining company to sell its said 400,000 shares of treasury stock was the payment by Riley and Robbers of the sum of $100,000 therefor, and that the other provisions permitting Riley and Robbers to name the secretary and treasurer and one director was no consideration or inducement to the mining company to make said sale. This was not an inducement given by Riley and Robbers as a part consideration of the purchase price of said stock, but was an inducement granted by the mining company to induce Riley and Robbers to purchase said stock. That was a concession on the part of the mining company to Riley and Robbers, and if it was such a concession as is *ultra vires,* when they demand it, the defense of *ultra vires* may be made by the mining company.

James F. Callahan and the Boutins were the principal stockholders of said corporation. We may infer from the record that they were anxious to secure money for the development of the mining claims owned by said mining company; that they entered into the contract to sell to Riley and Robbers the 400,000 shares of the treasury stock for the purpose of developing said mine. The corporation got the benefit of the money paid by Riley and Robbers, at least for 224,000 shares of said stock, and for some reason thereafter they concluded that it was to their interest to prevent Riley and Robbers from getting possession of said 176,000 shares of stock. It may have been that the value of said mining claims had greatly increased. The presumption to be drawn from the record is not that they were attempting to defeat Riley and Robbers for the reason that said stock had greatly decreased in value. However, whatever may have been the motive of the mining company, it seems clear that they are not now attempting to protect Riley and Robbers from any great loss or any loss whatever by their plea of *ultra vires.* It is a well-settled rule that the doctrine of *ultra vires* when invoked for or against a corporation should not be allowed to prevail where it would defeat the ends of justice or work a legal wrong. (*Ohio & Miss. Ry. Co. v. McCarthy,* 96 U. S. 258, 24 L. ed. 693; *Burke*

*Land etc. Co. v. Wells, Fargo & Co.,* 7 Ida. 42, 60 Pac. 87.)
It is also well settled that a corporation cannot avail itself of
the defense of *ultra vires* when the contract has been in good
faith fully performed by the other party and the corporation
has had the full benefit of the performance of the contract.
(*Whitney Arms Co. v. Barlow,* 63 N. Y. 62, 20 Am. Rep. 504.)

This court held in the case of *Fremont County v. Warner,*
7 Ida. 367 (370), 63 Pac. 106, that since both parties were
competent to contract and the plaintiff county having received
the benefits of the contract there involved, it was estopped
from setting up the defense of *ultra vires.* The court there
states: "This rule is so well established and is consonant with
every principle of equity and common honesty, that it needs
no citation of authority to support it."

So in the case at bar; the principles of equity and common
honesty will not permit the mining company to obtain all of
the benefits it was to receive under the provisions of said con-
tract and then avoid the legal provisions of said contract
by pleading *ultra vires* as to certain provisions of the con-
tract which were clearly made for the benefit of Riley and
Robbers.

Counsel for respondent contends that this appeal was mani-
festly taken for delay, and asks, under Rule 44 of the rules
of this court, that damages be allowed against the appellant
mining company of twelve per cent on the sum of $79,200,
dividends that have been withheld from the respondents Riley
and Robbers and which have been paid to the clerk of the dis-
trict court. After a careful consideration of this matter the
court has concluded to, and hereby does, direct the trial court
to amend its former judgment by adding thereto judgment
against the Callahan Mining Company for seven per cent per
annum upon each of the dividends paid over to the clerk of
the court from the date they were paid to the clerk until said
sums are paid over by the clerk to the said Riley and Robbers,
or their assigns.

We therefore hold that the provisions of said contract for
the purchase of said stock and the provisions that Riley and
Robbers may name the secretary and treasurer and one

director, and that the net profits shall be divided as provided in said contract are not interdependent but are divisible, the one not depending on the other.

Finding no error in the record, the judgment must be affirmed, and it is so ordered, with costs in favor of the respondents, The First National Bank, Riley and Robbers.

Morgan, J., and Bryan, District Judge, concur.