(October 19, 1926.)

POWER COUNTY, IDAHO, a Municipal Corporation, Respondent, v. EVANS BROTHERS LAND & LIVE STOCK COMPANY, a Corporation, and J. PAUL EVANS, Appellants.

[252 Pac. 182.]

SATISFACTION OF JUDGMENT NOT GROUND FOR DISMISSING APPEAL— CORPORATION AS SURETY—DEFENSE OF ULTRA VIRES ESTOPPED— STOCKHOLDER ESTOPPED FROM DEFENSE OF ULTRA VIRES.

1. It is not ground for dismissal of defendant's appeal that after taking of appeal the judgment was paid and satisfied by execution; it being necessarily accomplished by hostile proceeding to which appellants were not parties.

2. A corporation which signed the bond of a bank as depository of county funds, having long believed its act was *ultra vires*, but taken no steps to avoid it, though knowing the county was continuing to make deposits by reason of the bond, and having had a community of interest with its principal, is estopped to assert against the county which received the bond in good faith that its act was *ultra vires*.

3. Stockholder in corporation, who has entrusted to the other stockholders, his father and brother, the conduct of its business, is estopped to claim its act in giving a bond, recited in its minutes, and a matter of public record, and of which with reasonable diligence he should have known, was *ultra vires*.

4. County which received bond of a bank as depository of county funds with a corporation as surety thereon had a right to

rely on declaration in resolution of corporation's directors that such signing was in furtherance of its business, and was not bound to inquire into company's authority to sign bond.

APPEAL from the District Court of the Fifth Judicial District, for Power County. Hon. Ralph W. Adair, Judge.

Action to recover on depository bond. Judgment for plaintiff. *Affirmed.*

Maurice M. Myers and Oppenheim & Lampert, for Appellants.

"Ordinarily, in the absence of express authority, a corporation has no power to enter into a contract as surety or guarantor and thus lend its credit to another corporation or person, at least where not in furtherance of its business." (*Louisville N. A. & C. R. Co. v. Louisville Trust Co.,* 174 U. S. 552, 19 Sup. Ct. 817, 43 L. ed. 1081, modifying 75 Fed. 433, 22 C. C. A. 378; *Pennsylvania R. Co. v. St. Louis A. & T. H. R.,* 118 U. S. 290, 6 Sup. Ct. 1094, 30 L. ed. 83; *Ward v. Joslin,* 105 Fed. 224, 44 C. C. A. 456; *Park Hotel Co. v. Fourth Nat. Bank of St. Louis,* 86 Fed. 742, 30 C. C. A. 409; 2 Fletcher, Cyc. Corp., p. 1869; *Best Brewing Co. v. Klassen,* 185 Ill. 37, 76 Am. St. 26, 57 N. E. 20, 50 L. R. A. 765; *Riley v. Callahan Min. Co.,* 28 Ida. 525, 155 Pac. 665; *Hall v. Auburn Turnpike Co.,* 27 Cal. 255, 87 Am. Dec. 75; *Pollitz v. Public Utilities Com. of Ohio,* 96 Ohio, 49, 117 N. E. 149, L. R. A. 1918D, 166.)

"It is *ultra vires* of a corporation to execute accommodation paper or to enter into contracts of guaranty or surety-

Publisher's Note.

2. See 7 R. C. L. 531.
3. See 7 R. C. L. 532.

See Appeal and Error, 3 C. J., 549, p. 675, n. 93; sec. 550, p. 678, n. 12.

Corporations, 14a C. J., sec. 2163, p. 315, n. 50; sec. 2169, p. 320, n. 88; sec. 2170, p. 324, n. 1; p. 326, n. 12; sec. 2171, p. 329, n. 18; sec. 2173, p. 332, n. 36, 42; sec. 2794, p. 746, n. 15.

ship not in furtherance of its business unless given express authority to do so." (*Tod v. Kentucky Union Land Co.*, 57 Fed. 47; *Lyon, Potter & Co. v. First Nat. Bank*, 85 Fed. 120; *National Park Bank v. German-American Warehouse & Sec. Co.*, 116 N. Y. 281, 22 N. E. 567, 5 L. R. A. 673; *Bridgeport City Bank v. Empire Store etc. Co.*, 30 Barb. (N. Y.) 421.)

The charter conveys two classes of power—those which are expressed and those which are implied as necessary to carry into effect some of the expressed powers. Beyond this a corporation has no power whatever and its acts are *ultra vires.* (*National Home Bldg. & Loan Assn. v. Home Sav. Bank*, 181 Ill. 35, 172 Am. St. 245, 54 N. E. 619, 64 L. R. A. 399; *Central Transport v. Pullman*, 139 U. S. 24, 11 Sup. Ct. 478, 35 L. ed. 55; *Thomas v. West Jersey R. Co.*, 101 U. S. 71, 25 L. ed. 950; *Mott v. Danville Seminary*, 129 Ill. 403, 21 N. E. 927; *People v. Chicago Gas*, 130 Ill. 268, 17 Am. St. 319, 22 N. E. 798, 8 L. R. A. 497; *Metropolitan Bank v. Godfrey*, 23 Ill. 579; *Caldwell v. Alton*, 33 Ill. 416, 75 Am. Dec. 282; *Davis v. Old Colony*, 131 Mass. 258, 41 Am. Rep. 221; *Madison W. M. Plank R. Co. v. Watertown & P. Plank Rd. Co.*, 7 Wis. 59.)

Every person dealing with a corporation is bound to take notice of its powers as imposed by its charter or governing statute. (*Salt Lake City v. Hollister*, 118 U. S. 256, 6 Sup. Ct. 1055, 30 L. ed. 176; *Chicago Union Traction v. Chicago*, 199 Ill. 484, 65 N. E. 451, 59 L. R. A. 631; *Gause v. Commonwealth Trust Co.*, 196 N. Y. 134, 89 N. E. 476, 24 L. R. A., N. S., 967; *First Nat. Bank v. Monroe*, 135 Ga. 614, 69 S. E. 1123, 32 L. R. A., N. S., 550.)

Estoppel arises only in case the corporation has reaped some approximate or substantial benefit from the *ultra vires* act. (*Spencer v. Alki Point Transp. Co.*, 53 Wash. 77, 132 Am. St. 1058, 101 Pac. 509.)

Where both the parties to a transaction have equal knowledge or means of knowledge there can be no valid estoppel. (*Leonard v. American Ins. Co.*, 97 Ind. 299.)

An unlawful and void act is incapable of being made good by ratification or estoppel. (*Louisville Trust Co. v. Louisville, N. A. & C. R. Co.*, 174 U. S. 552, 19 Sup. Ct. 817, 43 L. ed. 1081; 21 R. C. L. 958.)

A corporation cannot escape liability on a contract of guaranty after receiving the benefit of the contract. (*Arkansas v. Lincoln*, 56 Kan. 145, 42 Pac. 706; *Western & Southern Fire Ins. Co. v. Murphys*, 56 Okl. 702, 156 Pac. 885; *Crowder State Bank v. Aetna Powder Co.*, 41 Okl. 394, 138 Pac. 392.)

Where the corporation has received no benefits from an *ultra vires* transaction, mere neglect to repudiate it will not estop it from denying its validity. (*Nebraska Shirt Co. v. Horton*, 3 Neb. Unof. 888, 93 N. W. 225.)

Bissell & Bird, R. S. Anderson and W. C. Loofbourrow, for Respondent.

A corporation may acquire rights or incur liabilities under a contract not directly authorized by a strict interpretation of its charter powers. (3 Fletcher, Cyc. Corp., p. 2577; *First National Bank v. Callahan Mining Co.*, 28 Ida. 627, 155 Pac. 673.)

A stockholder who has consented to the doing of a certain act by a corporation and acquiesced therein is bound thereby and estopped from suing to set the same aside. (6 Fletcher, Cyc. Corp., p. 4073; *Baillie v. Columbia Gold Mining Co.*, 86 Or. 1, 166 Pac. 965, 167 Pac. 1167; *McCampbell v. Fountain Head R. Co.*, 111 Tenn. 55, 102 Am. St. 731, 77 S. W. 1070.)

Though not specifically mentioned in its charter powers, a corporation has authority to do all acts necessary for the purposes of the corporation, and when the authorized managing corporate officers determine that a certain contract is in furtherance of corporate business such contract will be enforced at the instigation of the other contracting party, who has materially changed his position in reliance upon said contract. (*Allis-Chalmers Mfg. Co. v. Citizens B. & T. Co.*, 3 Fed. (2d) 316; C. S., sec. 4752 (8); 7 Cal. Jur.,

43 Idaho—11

p. 65; *James Eva Estate v. Mecca Co.,* 40 Cal. App. 515, 181 Pac. 415; *Bondy v. American Transfer Co.,* 15 Cal. App. 746, 115 Pac. 965; *Bates v. Coronado Beach Co.,* 109 Cal. 160, 41 Pac. 855; *Woods Lumber Co. v. Moore,* 183 Cal. 497, 191 Pac. 905, 11 A. L. R. 549.)

The contract, which appellants claim to be *ultra vires,* having been fully performed by respondents, and the latter having changed their position to their disadvantage, can be enforced and appellants are estopped to assert that it is *ultra vires.* (3 Fletcher, Cyc. Corp., p. 1547; *Hutchins v. Planters Nat. Bank,* 128 N. C. 72, 38 S. E. 252; *Seeber v. Commercial Nat. Bank,* 77 Fed. 957; *Kanneberg v. Evangelical etc. Congregation,* 146 Wis. 610, Ann. Cas. 1913C, 376, 131 N. W. 353, 36 L. R. A., N. S., 138; *Maxwell v. Akin,* 89 Fed. 178; *Arkansas etc. Co. v. Lincoln,* 56 Kan. 145, 42 Pac. 706; *Union Water Co. v. Murphy,* 22 Cal. 620; *Vought v. Eastern Bldg. Assn.,* 172 N. Y. 508, 92 Am. St. 761, 65 N. E. 496.)

A corporation cannot avail itself of the defense of *ultra vires* when the contract has been in good faith performed by the other party and the corporation has had the benefit of the performance of the contract. (*First Nat. Bank v. Callahan Min. Co.,* 28 Ida. 627, 155 Pac. 673; *Burke Land etc. Co. v. Wells, Fargo Co.,* 7 Ida. 42, 60 Pac. 87; *Darknell v. Coeur d'Alene etc. Co.,* 18 Ida. 61, 108 Pac. 536; *Fremont County v. Warner,* 7 Ida. 367, 63 Pac. 106; *Meholin v. Carlson,* 17 Ida. 742, 134 Am. St. 286, 107 Pac. 755; *Pocatello Independent School Dist. v. Fargo,* 38 Ida. 563, 223 Pac. 232; *Citizens Bank & T. Co. v. Pocatello Milling & Elevator Co.,* 41 Ida. 403, 240 Pac. 186; *First Nat. Bank v. Greenville Oil & Cotton Co.,* 24 Tex. Civ. App. 645, 60 S. W. 829; *Crowder Bank v. Aetna Powder Co.,* 41 Okl. 394, 138 Pac. 392; *Creditors Claim & Adj. Co. v. Northwest Loan & Trust Co.,* 81 Wash. 247, Ann. Cas. 1916D, 551, 142 Pac. 670; *Graysonia etc. Co. v. Goldman,* 247 Fed. 423; *First Nat. Bank v. Guardian Trust Co.,* 187 Mo. 494, 86 S. W. 109, 70 L. R. A. 79.)

LEE, District Judge.—On April 12, 1915, L. L. Evans and his sons, L. L., Jr., and Roland, executed and filed with the recorder of Power county, Idaho, articles of incorporation of the Evans Brothers Land & Live Stock Company, hereinafter denominated the Evans Company. The declared purposes for which such corporation was formed were:

" . . . . to carry on a general farming and livestock business, to buy, own, operate and sell real estate, horses, cattle, hogs, sheep and all kinds of personal property, to erect, buy, own and operate mills and factories, or any kind of manufacturing plants, to borrow and lend money, and to receive money and other property and hold the same in trust."

A certificate of incorporation duly issued, and the company was organized under a directorate, all stockholders and officers being members of the Evans family. On January 5, 1922, the company through its board of directors adopted and spread upon its minutes the following resolution:

"Resolved, that in furtherance of the business of this corporation, the officers hereof are empowered to sign as sureties, depository bonds, under which bonds the First State Bank of Rockland, or the First National Bank of American Falls, or the Evans State Bank of American Falls, Idaho, may be principals, for the purpose of securing public deposits in either of such banks."

Thereafter, the Evans State Bank, controlled by the Evans family, was consolidated with the First National Bank of American Falls under the latter's name, L. L. Evans and L. L. Evans, Jr., being directors, and respectively, president and vice-president thereof. Various members of the Evans family "were all the stockholders."

Prior to the consolidation of these banks, plaintiff had on deposit therein the respective sums of $8,964.33 and $40,760.04, all of which remained after consolidation in the said First National Bank. This bank was designated as a depository of plaintiff's funds; and desiring to retain said funds on deposit, and secure further deposits of similar

funds, it executed and delivered to plaintiff on May 1, 1922, its depository bond to secure the same in the principal sum of $20,000. One of the sureties executing this bond was the Evans Company above mentioned. It obligated itself in the sum of $14,000.

At the time of tendering the bond, the Evans Company delivered plaintiff's board of county commissioners a certificate in words and figures as follows:

"Resolution: At a regular meeting of the Evans Brothers Land & Live Stock Company held at the office of such corporation on January 5th, 1922, the following resolution was duly offered and adopted as appears by the minute books of such corporation;

"Resolved, that in furtherance of the business of the corporation the officers hereof are empowered to sign as sureties, depository bonds, under which bonds the First State Bank of Rockland, or the First National Bank of American Falls, or the Evans State Bank of American Falls, Idaho, may be principal for the purpose of securing public deposits in either of such banks.

"Dated January 22nd, 1922.

"L. L. EVANS, President.

"L. L. EVANS, Jr., Secretary.

"State of Idaho,

"County of Power,—ss.

"I, L. L. Evans, Jr., Secretary of the Evans Brothers Land and Live Stock Company, do hereby certify that the foregoing is a full, true and correct copy of a resolution appearing on the minute book of such corporation, offered and adopted as above stated.

"Witness my hand and the seal of such corporation the 2nd day of February, 1922.

"Corporate seal.

"L. L. EVANS, Jr., Secretary."

Plaintiff accepted the bond and relying thereon increased its deposits in said bank until the closing thereof on February 8, 1923, when the deposits totaled $52,844.93. After crediting on this amount the proceeds of other bonds,

there remained an unpaid balance of $35,734.93, to recover which this action was brought.

The sole defense interposed by the Evans Company was that the execution of the surety bond was *ultra vires.*

J. Paul Evans, a son of L. L. Evans, intervened, claiming to own 100 shares of the company stock, and setting up the same defense as the defendant company. From a judgment in plaintiff's favor, both the company and intervenor have appealed, assigning as error : That the court erred in that it concluded that the acts of the defendant Evans Brothers Land and Live Stock Company, a corporation, were not *ultra vires;* that the court erred in that it found as a conclusion of law and without finding as a fact that said Evans Brothers Land and Live Stock Company has been benefited in its business on account of the execution of said bond, and is therefore estopped from denying its action in so signing the bond was, and is, *intra vires.*

[1] Respondent moves a dismissal of the appeals upon the ground that heretofore and subsequent to the taking of appeal appellants brought an action in the trial court, claiming that the judgment had been fully paid and satisfied by execution, and praying injunctive relief against further threatened levies. Such satisfaction, however, must have been accomplished by a hostile proceeding to which appellants were in nowise parties. In order to maintain their appeals, they were not required to stay execution. They may either have been unable to furnish *supersedeas* bond, or elected to stand upon the appeal and sue for conversion in case of a successful issue. The motion to dismiss is denied.

[2] At the time the Evans Company executed the bond, it was indebted to its principal, the First National Bank of American Falls, in the maximum sum by law allowed. Its officers were officers of the bank. Its directors were among the bank's directorate. Its stockholders were stockholders of the bank. The Evans family controlled both. The entire paid-in capital of the company had been advanced without obligation of repayment by L. L. Evans who handled the

stock as he saw fit without objection or apparent inquiry by other members of the family who constituted the remaining stockholders. The company owned a large part of the property near the bank; and the Evans family had "a large part" of their finances tied up in the bank. Confronted with such an array of interlocking interests, it is difficult to conceive how any benefit inuring to the bank from the execution of this bond could fail to work a direct benefit to the company. The trial court so concluded, which conclusion was in effect a finding of fact supported by the evidence. But, granting that the court erred, it further appears that for over a period of nine months, while plaintiff was continually increasing its deposits, the defendant company had been advised and in fact believed its undertaking to be *ultra vires* and of no effect, yet took no steps to avoid its solemnly certified liability. It knew that plaintiff had changed and was changing its position, and parting with value by reason of the former's officially attested right to sign the bond; and by its silence and inaction encouraged and invited further change.

We think a strict interpretation of the company's express and implied charter powers would render the execution of the bond *ultra vires,* but the act having been neither *malum prohibitum nor malum in se* was not void but voidable and as such subject to all equities applicable to like contracts. This court has formerly declared that the doctrine of *ultra vires,* when invoked for or against a corporation, should not be allowed to prevail where it would defeat the ends of justice or work a legal wrong. (*First Nat. Bank v. Callahan Min. Co.,* 28 Ida. 627, 155 Pac. 673.) Especially is this true where the contract has been executed in good faith by the party seeking to enforce it. (*McQuaide v. Enterprise Brewing Co.,* 14 Cal. App. 315, 111 Pac. 927; *First Nat. Bank v. Callahan, supra; Burke Land etc. Co. v. Wells-Fargo Co.,* 7 Ida. 42, 60 Pac. 87; *Darknell v. Coeur d'Alene etc. Co.,* 18 Ida. 61, 108 Pac. 536; *Fremont County v. Warner,* 7 Ida. 367, 63 Pac. 106; *Meholin v. Carlson,* 17 Ida. 742, 134 Am. St. 286, 107 Pac. 755; *Pocatello I. School Dist. No. 1 v.*

*Fargo,* 38 Ida. 563, 223 Pac. 232; *Citizens Bank & T. Co. v. Pocatello M. & E. Co.,* 41 Ida. 403, 240 Pac. 186; 14a C. J. 319; 3 Fletcher, Cyc. Corp., sec. 1547.; *Hutchins v. Bank,* 128 N. C. 72, 38 S. E. 252; *Seeber v. Bank,* 77 Fed. 957; *Kanneberg v. Evangelical etc. Congregation,* 146 Wis. 610, Ann. Cas. 1913C, 376, 131 N. W. 353, 39 L. R. A., N. S., 138; *James Eva Estate v. Mecca Co.,* 40 Cal. App. 515, 181 Pac. 415; *Maxwell v. Akin,* 89 Fed. 178; *Arkansas etc. Co. v. Lincoln,* 56 Kan. 145, 42 Pac. 706; *Vought v. Eastern Bldg. Assn.,* 172 N. Y. 508, 92 Am. St. 761, 65 N. E. 496; *Union Water Co. v. Murphy,* 22 Cal. 620.)   And, where there is a community or identity of interest between a surety and a principal in whose behalf the surety has undertaken an *ultra vires* contract.   (*First Nat. Bank v. Guardian Trust Co.,* 187 Mo. 494, 86 S. W. 109, 70 L. R. A. 79; *Graysonia etc. Co. v. Goldman,* 247 Fed. 423.)   In the former case the court said:

"The president of the railroad company at the time of the execution of this note was also the vice-president of the trust company, and the testimony of this official, as disclosed by the record, clearly indicates the deep interest the defendant had in the success of the railroad company in the accomplishment of the purposes for which it was organized. That the business relations between the defendant and the Belt Railroad Company were close, and that the defendant was a large creditor of said railroad company, and therefore was interested in maintaining it as a going concern, cannot be disputed. . . . . .

"The contract in the case was fully executed on the part of the plaintiff, and its money was parted with by reason of the execution of the note by the defendant.   This being true, the question confronts us, should the defense of *ultra vires,* as interposed by the defendant, be availing under the facts as disclosed by the record?   We have reached the conclusion that it should not be.   It may be conceded that, under the powers conferred upon the defendant by the statutes under which it was organized, it would not be authorized to simply engage in the business of becoming a purely

accommodation maker or indorser of promissory notes. . . . . It is apparent that the execution of this note by the defendant was not purely a matter of accommodation, but was induced by reason of the interest in the railroad company, not only as a stockholder, but also as a creditor, and that the procuring of the money upon this note to pay the pressing indebtedness on the part of the railroad company was not only of interest to the defendant as a stockholder, but at least increased the chances of finally realizing from its debts against the company.''

In the facts disclosed by the instant record, it would be eminently unjust both to plaintiff and the other sureties were the defendant company permitted to escape the consequences of this contract evidently undertaken in good faith by all of the parties, and in good faith performed by all of them save appellant. Good conscience would hold it estopped to plead *ultra vires.*

[3]   In view of the fact that the intervenor was a stockholder in the Evans Brothers Land & Live Stock Company, that he lived near American Falls and was in American Falls at various times during the approximately year and one-half that this bond was in force, that the bond was a matter of public record, having been filed with the county recorder as provided by law, that the minutes and recitals authorizing the giving of the bond were part of the files of the corporation and in view of the testimony of the intervenor, particularly the portion found on page 206, ff. 576, 577, as follows:

''Mr. Bissell, resuming:

''Q. You turned over so far as you were concerned—you allowed your father and your brother, L. L. Evans, Jr., to run the business?

''A. Yes, sir.

''Q. Anything they done was satisfactory to you?

''A. Well, I wasn't at any meeting.

''Q. Any business they done was satisfactory to you?

''A. Yes, sir.

"Q. And you were willing and allowed them to conduct the business to suit themselves?

"A. Yes, sir.

"Q. And whatever they wanted to do you would give your consent?

"A. I have never stopped them from doing anything; I never asked them not to do it.

"Q. Did you ever protest against their doing anything?

"A. No, sir."

And again at ff. 579, 580 and 581:

"Q. You were at all times willing to pledge any interest you had to assist your father and the bank?

"A. I was at that time, yes, sir.

"Q. Now, Mr. Evans, did you have anything to do with the conduct of the business of the Evans Brothers Land & Live Stock Company?

"A. No, sir.

"Q. You did not have the active management of it?

"A. No, sir.

"Q. You didn't do any farming for it?

"A. I worked on the farms, I had no management of it, no direct management.

"Q. That control was vested in L. L. Evans, and L. L. Evans, Jr., was it not?

"A. As to the direct control possibly. As far as working out on the ranch, I done that. I worked out there putting up hay and running the cattle.

"Q. And you were perfectly willing that your father and your brother should conduct the business any way they saw fit?

"A. In the line they were in, yes, sir.

"Q. And anything else, were you not?

"A. Yes, sir.

"Q. Now Mr. Evans, did you ever protest against the signing of this bond by the Evans Brothers Land & Live Stock Company?

"A. No, sir."

—it would seem that with reasonable diligence the intervenor should have known of the signing of this bond and should have protested long ere this. He, too, must be estopped.

The judgment is affirmed, with costs to respondent.

Givens and Taylor, JJ., concur.

(December 20, 1926.)

ON PETITION FOR REHEARING.

T. BAILEY LEE, J.—Appellants complain that the court in its opinion made certain misstatements of facts, to wit: that in speaking of appellant company, the court stated: "Its stockholders were the stockholders of the bank." The court did not so declare, the opinion reading: "Its stockholders were stockholders of the bank." J. Paul Evans testified that various members of the Evans family "were all the stockholders" of the bank. Aside from his father and himself, L. L. Evans, Jr., testified that the other stockholders of the company were "all children" of L. L. Evans. The company's stock-book introduced as Intervenor, Evans', Exhibit 15, shows every share issued to be standing in the name of some member of the Evans family.

L. L. Evans, Jr., did testify that some 199 shares of the company stock had been delivered to Ireland & Company as collateral; and the stock-book shows such a pledge of 159 shares, but it shows no transfer, and the witness testified that Ireland did not wish to take his stock direct. That the family controlled both bank and company is abundantly evidenced by the testimony of J. Paul Evans above cited, together with the further testimony of L. L. Evans, Jr., that he actively managed the company in consultation with his father and brother.

It is insisted that at the time the surety bond was signed, L. L. Evans and L. L. Evans, Jr., were not officers of the First National Bank. Such is not the fact disclosed by the record. L. L. Evans, Jr., testified that his father and himself became respectively president and vice-president upon

the consolidation. This consolidation took place on April 26, 1922. The bond in question was signed on May 1st, five days later. And it is nowhere shown or even suggested that such officers had ceased to function.

Finally, it is urged that respondent county did not rely upon the validity of the company's undertaking, but knew within an hour after its execution that the obligation was *ultra vires*. The only testimony on this point is that of L. L. Evans, Jr., who testified generally that he had been advised by the depositing units that the bond was *ultra vires*. Pinned down to individual instances, he was unable to name any person whom the record shows to have been a member of a unit board.

[4] Counsel earnestly insist that respondent was fixed with a duty to inquire into the company's authority to sign the bond. We do not think so. The company by its board of directors had solemnly declared such action to be in the furtherance of its business; and the county had a right to rely upon the truth and good faith of that declaration.

The petition for rehearing is denied.

Givens and Taylor, JJ., concur.

Wm. E. Lee, C. J., dissents.