(May 19, 1905.)

## BRINTON v. LEWISTON NATIONAL BANK.
### [81 Pac. 112.]

BANKS AND BANKING—CREDIT BY WIFE MAY BE REVOKED WHEN—RIGHTS AND LIABILITIES OF PARTIES—PAPERS DEPOSITED IN ESCROW—ESCROW AGREEMENT.

1. Where the bank of C. wired the L. N. Bank that the Alamance Mining Company had deposited with it for credit of L. N. Bank for use of Brinton $1,000, which telegram was received after banking hours and the order countermanded by wire the following day before credit had been given thereof, and before any rights or liabilities of B. or other parties had been incurred in regard thereto, *held*, that the L. N. Bank was not liable to B. for such deposit.

2. On the facts of this case the Bank of C. had the right to countermand said order for credit before any rights or liabilities had been incurred or losses sustained in consequence of it by either Brinton as attorney in fact or any third person.

(Syllabus by the court.)

APPEAL from the District Court of Nez Perce County. Honorable Edgar C. Steele, Judge.

An action to recover for an alleged deposit.    Judgment for plaintiff.    Reversed.

I. N. Smith, for Appellant.

It is well settled that a party cannot make matter admissible in evidence by setting forth immaterial allegations in the complaint.    Besides, the attention of the court is directed to the following authorities: *Teutonia Loan etc. Co. v. Turrell,* 19 Ind. App. 469, 65 Am. St. Rep. 419, 49 N. E. 852; *Brunswick etc. Co. v. Bingham,* 107 Ga. 270, 33 S. E. 56; *Ferris v. National Commercial Bank,* 158 Ill. 237, 41 N. E. 1118; *Keefer v. Mason,* 36 Ill. 406.    Orders of payment of money issued by the bank may be revoked by the bank issuing such orders prior to the acceptance thereof and prior to a change of relations of third parties based thereon; likewise orders of credit may be revoked.    The telegram of November 15th was canceled by the telegram of November 16th, before any third party's rights were prejudiced thereby.    The court erred, therefore, in not giving peremptory instruction asked for by defendant; also instruction No. 2, at folio 443.    (*Second Nat. Bank of Baltimore v. Western Nat. Bank,* 51 Md. 128, 34 Am. Rep. 300; *Holt v. Spokane etc. Ry. Co.,* 3 Idaho, 703, 35 Pac. 39.)    It is well settled that instructions, though correct in a point of law which are not founded upon the evidence in the case at issue, are reversible error; likewise, an instruction which assumes facts to exist, of which there is no evidence, is reversible error.    (11 Ency. of Pl. & Pr., p. 128 et seq.)    The misconstruction of the escrow agreement which runs through the entire charge is reversible error.    (11 Ency. of Pl. & Pr., pp. 78, 79.)    It is also well settled that the powers of an escrow agent are limited by the powers under which he acts.    (*McDonald v. American Nat. Bank,* 65 Pac. 896.)    The court left the construction of the escrow agreement to the jury.    This is error.    (11 Ency. of Pl. & Pr., p. 78; *Green v. Christie,* 4 Idaho, 438, 40 Pac. 54.)

George W. Tannahill, for Respondent.

Counsel contends on page 31 that the telegrams show that it was impossible for money to have been received, and the testimony of Kester is that no credit was made, and incidentally says that Mr. Kester's testimony is not disputed. We respectfully submit that Mr. Kester has impeached his own testimony, and it is disputed by Mr. Brinton, and as to whether or not there was a credit made on the books of the bank it makes absolutely no difference. If they failed to make the credit, Mr. Kester was negligent in his duty, and the money had gone so far that it required affirmative action from Mr. Kester in violation of the rights of Mr. Brinton to have it withdrawn from the Bank of California, and if he has done this, it makes absolutely no difference whether the money was placed to Brinton's credit on the books of the bank or not, and Mr. Kester's testimony on every point is disputed, and he has not only been contradicted by Mr. Brinton and documentary evidence on material points, but has contradicted himself and been forced to admit that his evidence was either false or he was badly mistaken. We respectfully submit that under these circumstances Mr. Kester, upon these material matters, cannot be taken as undisputed. In support of our contention in this case we respectfully call attention to the following authorities: *Wiggins Ferry Co. v. Ohio etc. R. Co.,* 142 U. S. 396, 12 Sup. Ct. Rep. 188, 35 L. ed. 1055; *Thompson v. Commercial Union Assur. Co. of London* (Colo. App.), 78 Pac. 1073. Where there is evidence in the record to justify the verdict, the reviewing court will not disturb it, though it be of opinion that the amount found reaches the extreme limit. (*Lownsdale v. Gray's Harbor Boom Co.,* 36 Wash. 198, 78 Pac. 905.) In addition to the authorities we have already cited bearing upon the liabilities of banks arising out of the collection of commercial paper and a reception of deposits, we cite the following: A bank with which a note is deposited for collection is agent of the holder: See 3 Am. & Eng. Ency. of Law, 803; *Waid v. Smith,* 7 Wall. (U. S.) 447, 19 L. ed. 207. After the collection was made the bank became debtor. This principle applies also between two banks, one of which forwards

paper for collection to another.    (3 Am. & Eng. Ency. of Law, 819.)    The Bank of California would have had no right to recall the money after remittance made to the Lewiston National Bank, even if the credit to Brinton had been entered upon its books at the request of the Alamance Mining Company upon a consideration that afterward failed because of the insolvency of the company or for any other reason. (*Canterbury v. Bank of Sparta,* 91 Wis. 53, 51 Am. St. Rep. 807, 64 N. W. 311, 30 L. R. A. 845.)    The relation between a bank and a depositor is merely that of debtor and creditor. (See 3 Am. & Eng. Ency. of Law, 826, note 11, and cases cited.)

SULLIVAN, J.—This is an action to recover $1,000, with interest thereon, alleged to have been deposited in the appellant bank to the credit of the respondent.    The following, among other facts, appear in the record:

On the twelfth day of June, 1900, the respondent, Thomas W. Jones, entered into a contract with John N. Ward for the sale of said Ward of the Republic and the Republic No. 2 mining claims, situated about three miles from Elk city, Idaho county, for the sum of $15,000, payments to be made as follows: $3,000 on or before April 1, 1901; $3,000 on or before November 1, 1901; $3,000 on or before February 1, 1902; $6,000 on or before the seventh day of June, 1902; and promissory notes were executed in the usual form of negotiable notes, with interest at the rate of seven per cent per annum, payable semi-annually.    Ward, the second party to said contract, agreed to do certain work on said mining claims and erect certain machinery thereon and a mill in connection therewith.    It is not necessary for a decision of this case to set out the full terms of said agreement.    It appears that said Ward proceeded and complied with the said agreement up to a certain date, and the mill erected thereon was destroyed by fire; and thereafter a supplementary agreement was made between said parties whereby they stipulated that in case $9,000 were paid as specified in said contract, the sum was to be taken as a full and complete discharge and satisfaction of all de-

mands that said Jones had against Ward arising out of the transaction referred to in said contract.

It was provided, among other things, in said supplementary contract that if the payment of said sum of $9,000 ($2,000 of which had been paid on the day of execution of the contract, leaving a balance of $7,000 not paid at the time specified), then the promissory notes and other documents executed in connection therewith which had been deposited with the Lewiston National Bank in escrow were to be delivered as follows: The deed deposited in escrow was to be delivered to J. N. Ward, or his agent; the notes of $15,000, or the mortgages securing the payment thereof, were to be delivered to Thomas W. Jones, or his authorized agent, and was to be of full effect except as to the payments made thereon. And it was provided that the execution of said supplementary agreement did not affect the liability of Ward to Jones to the full extent of $15,000, unless the $9,000 referred to were paid at the time and in the manner specified. All payments thereon were to be made to the Lewiston National Bank, deposited there to the credit of Caleb Brinton as attorney in fact of said Jones. It was expressly stipulated that time was of the essence of said agreement, except that if the performance of any act required under this agreement was prevented at the time specified therein, by either (1) the act of God; (2) the elements; or (3) unavoidable delay in the transmission of the money called for or any part thereof, or of the machinery and necessary appurtenances to erect and operate the mill called for therein. That such matters so happening should operate to excuse the nonperformance of such agreement, for the period of five days only.

It appears that when the note of $3,000 due November 1, 1901, became due, payment was not made; that on November 15, 1901, the Bank of California wired the Lewiston National Bank as follows: "San Francisco, November 15, 1901. Lewiston National Bank, Lewiston, Idaho. Alamance Mining Company has deposited with us, for your credit, for use of Caleb Brinton, one thousand dollars." Said dispatch was received by the Lewiston National Bank at 4:50 o'clock P. M., which

was after banking hours. Before the books of the First National Bank were written up on the 16th, and before any credit of said sum was made, and on November 16, 1901, at 11:40 o'clock A. M., a telegram was received by the Lewiston National Bank ordering the credit of said $1,000 canceled, and no credit was entered on the books of the First National Bank in favor of said Brinton or Jones. In the telegram directing the cancellation of said credit the Bank of California requested the First National Bank of Lewiston to wire it if the request was complied with, and the bank ot Lewiston wired them immediately that the request had been complied with. The question arises on the above-stated facts as to whether the appellant bank is liable. There has been considerable controversy as shown by the record and briefs of counsel of the relations existing between the various parties, and especially Ward and the Alamance Mining Company. But we think it is sufficiently shown by the record that the Alamance Mining Company was the assignee of the contract between Ward and Jones, and we think that the record clearly shows that the Lewiston National Bank sustained the relation to the parties of the holder of the escrow agreement and other papers executed in connection with said transaction.

It further appears that neither the Alamance Mining Company nor Ward paid said $3,000 note when it became due on the 1st of November, 1901. Time was made of the essence of the contract. In case such payments were not made as stipulated, the deed of said property was to be delivered to Ward or his agent, and the promissory notes and other papers were to be delivered to Jones or his agent. That being true, the escrow holder had no authority to receive any payments after such time had transpired without the consent of both parties; that point, however, we do not consider vital to this case.

It clearly appears from the record that the secretary of said mining company made the deposit of said $1,000 on the 15th of November, 1901, with the Bank of California, and requested it to wire the Bank of Lewiston to that effect. That wire was received by the bank at Lewiston, after banking hours, and

the next morning before the credit had been entered on the books of the bank, the Bank of California requested the bank at Lewiston not to give said credit, and the bank at Lewiston immediately wired back that the request was granted.

It appears from the record that soon after the secretary of said mining company had made such deposit with the Bank of California the president of said company and one of the directors ascertained that said deposit had been made without their knowledge or consent, and at once went to the Bank of California and requested to withdraw said deposit, as we think they had a right to do. And Brinton, the attorney in fact for Jones, had not been informed of the receipt of said telegram and no one had incurred any loss or damage or had assumed any new rights or liabilities because of the first telegram above referred to. And we are of the opinion that the Bank of California, or through it, the Alamance Mining Company had the right to countermand said orders for credit before any rights or liabilities had been incurred or losses sustained in consequence of it, by either Brinton as attorney in fact or any third parties. (See *Second Nat. Bank of Baltimore v. Western Nat. Bank*, 51 Md. 128, 34 Am. Rep. 300.)

The First National Bank of Lewiston received no money from the Bank of California. The above-stated facts show how the transaction occurred; that it was impossible to transmit the money itself from San Francisco to Lewiston in the space of time that occurred between the two telegrams, and even if it had actually received the money and the depositor had appeared and requested that the instructed credit be not given, before any rights or liabilities or losses had been sustained by anyone in consequence of it, they would have the right to recall the credit. The judgment of the court below is reversed and the cause remanded with instructions to enter judgment in favor of the appellant. Costs are awarded to the appellant.

Stockslager, C. J., concurs.

Ailshie, J., did not sit on the hearing of this case and took no part in the decision thereof.