677 P.2d 507

**INTERNATIONAL BUSINESS MACHINES CORPORATION, a corporation, Plaintiff-Respondent,**

v.

**Carrol Lee LAWHORN, Defendant-Appellant.**

No. 14127.

Court of Appeals of Idaho.

Feb. 29, 1984.

Bert L. Osborn, Welch & Osborn, Payette, for defendant-appellant.

Richard C. Mellon, Jr., Elam, Burke, Evans, Boyd & Koontz, Boise, for plaintiff-respondent.

BURNETT, Judge.

In this case we find International Business Machines Corporation suing to recover money it loaned on property in Sand Hollow, Idaho. The property had been owned by Carrol Lee Lawhorn, then an employee of IBM. When the company transferred Lawhorn from his post in Idaho to a new assignment elsewhere, it made a "home equity loan" to help him find another house. IBM later terminated Lawhorn's employment, the loan went unpaid, and this lawsuit resulted.

IBM's complaint prompted a counterclaim from Lawhorn. He contended that the company had breached written and oral agreements to buy the Idaho property. However, the district court decided in favor of IBM. By summary judgment the court held that Lawhorn was obliged to repay the loan, and the court rejected Lawhorn's assertion of a written agreement for IBM to buy the property. In a second summary judgment the court also rejected Lawhorn's averment of an oral agreement to buy the property. Lawhorn appealed. We affirm.

Five issues are presented on appeal. Three are procedural: (a) Did Lawhorn timely appeal from the first summary judgment? (b) Should the appeal from that judgment be dismissed because the judgment now has been satisfied? (c) Should we consider various questions presented for the first time on appeal? The remaining two issues are substantive: (a) Should IBM have been awarded interest on the loan when the loan agreement recited that it was interest-free? (b) Would the alleged oral agreement to purchase the Idaho property be enforceable?

I

We turn first to the procedural questions. Each question has been raised by IBM, seeking to narrow the scope of our review of Lawhorn's challenges to the judgments below.

## A

The threshold question is jurisdictional—whether Lawhorn has filed a timely and proper appeal from the first summary judgment. IBM invites our attention to the fact that Lawhorn filed a single appeal, following entry of the second summary judgment. His "Notice of Appeal" and "Amended Notice of Appeal" state that he is appealing from the "Judgment dated March 9, 1981 ... wherein Count II of [his] Counterclaim was dismissed with prejudice." This language identifies the second summary judgment. Lawhorn has not referred in either notice to the first summary judgment, dated June 27, 1980. Upon the hypothesis that the first summary judgment was final when entered, IBM argues that Lawhorn's appeal fails to embrace it because the notices are untimely and do not refer to the first judgment. We disagree.

■ We believe IBM's hypothesis is inconsistent with I.R.C.P. 54(b). Rule 54(b) provides that when multiple claims for relief are presented in an action, an adjudication of less than all the claims does not terminate any of the remaining claims. Such an adjudication is interlocutory, subject to revision at any time before entry of a judgment disposing of all remaining claims. *Baker v. Pendry*, 98 Idaho 745, 572 P.2d 179 (1977). Partial summary judgments are immediately appealable only if certified by the district court. I.A.R. 11(a)(2); *Viani v. Aetna Insurance Co.*, 95 Idaho 22, 501 P.2d 706 (1972). The first judgment in this case was not certified.

Our Supreme Court has announced guidelines for determining whether an uncertified judgment should be considered final. *See Loomis, Inc. v. Cudahy*, 101 Idaho 459, 615 P.2d 128 (1980); *Idah-Best, Inc. v. First Security Bank of Idaho*, 99 Idaho 517, 584 P.2d 1242 (1978). In *Loomis*, a partial summary judgment was held to be final and therefore was immediately appealable. However, that judgment resolved all substantive issues in the case. 101 Idaho at 460, 615 P.2d at 129. In *Idah-Best*, the court held a self-styled "partial summary judgment" to be a final judg-

ment because it was intended as a final judgment and, as in *Loomis*, it disposed of all substantive issues. 99 Idaho at 519, 584 P.2d at 1244.

Contrary to *Loomis* and *Idah-Best*, the first summary judgment in this case did not resolve all substantive issues. Lawhorn's claim that IBM agreed to purchase his property was not fully adjudicated. The contention of an oral purchase agreement was not addressed. Accordingly, the first judgment was interlocutory and not immediately appealable. The time for appealing it did not start to run until the second judgment was entered.

■ Rule 17(e), I.A.R., which had become effective when Lawhorn filed his appeal, provides that an appeal from a final judgment "shall be deemed to include ... all interlocutory judgments, orders and decrees." Consequently, Lawhorn's appeal from the second summary judgment includes the first summary judgment. This inclusion is deemed to occur by operation of the rule. Lawhorn's failure specifically to designate the first summary judgment in his notice of appeal is not fatal. We conclude that our appellate jurisdiction over the first summary judgment has been properly invoked.

## B

■ The next procedural question is whether Lawhorn's appeal from the first judgment—insofar as it relates to the loan obligation—should be dismissed for mootness. Through representations of counsel and by augmentation of the record, we are informed that Lawhorn now has paid IBM. The money judgment has been satisfied. The generally accepted test for determining whether satisfaction of a judgment cuts off the payor's right to appeal is whether the satisfaction was voluntary. *See, e.g.*, Annot., 39 A.L.R.2d 153, 157 (1955). If the satisfaction was involuntary, the appeal remains viable. Thus, the issue here is whether Lawhorn satisfied the judgment voluntarily.

■ We are informed that the judgment was satisfied to prevent a scheduled execution sale of the Idaho property. Apparently, Lawhorn did not post an appeal bond, nor did he request the district court to stay execution pending the appeal. Satisfaction of a judgment by execution is involuntary, and does not cut off the judgment debtor's right to appeal. *E.g., Backman v. Douglas*, 46 Idaho 671, 270 P. 618 (1928); *Power County v. Evans Bros. Land & Livestock Co.*, 43 Idaho 158, 252 P. 182 (1926); *Falls Creek Timber Co. v. Day*, 39 Idaho 495, 228 P. 313 (1924). In *Falls Creek*, the court stated, "[t]he involuntary payment ... [in] satisfaction of a judgment ... does not affect the right of appeal." *Id.* at 497, 228 P. at 313 (quoting 3 C.J. 675, § 549).

Here we encounter a variation upon this theme. The satisfaction of IBM's judgment apparently was not the product of an execution sale, but a means to avoid the sale. However, the same element of compulsion was present. We hold that Lawhorn's satisfaction of the judgment, to save his property from being sold at a scheduled sheriff's sale, was involuntary. *Accord, Favret Co. v. West*, 21 Ohio App.2d 38, 254 N.E.2d 709 (1970); *see generally* Annot., 39 A.L.R.2d 166 (1955). *But cf. People ex rel. Neilson v. Wilkins*, 101 Idaho 394, 614 P.2d 417 (1980) *and Bob Rice Ford, Inc. v. Donnelly*, 98 Idaho 313, 563 P.2d 37 (1977) (judgments in each case voluntarily satisfied). We conclude that Lawhorn's appeal concerning the loan obligation has not been mooted.

## C

■ The last procedural question concerns an attempt by Lawhorn to raise several issues for the first time on appeal. These issues are whether IBM was required to foreclose an imputed mortgage upon the Idaho property before obtaining a money judgment; whether IBM was entitled to receive judgment only to the extent of Lawhorn's equity in the property; and whether IBM, through the alleged oral agreement, wrongfully induced Lawhorn to accept his new assignment and thus con-

tributed to his inability to repay the loan. It is well established in Idaho that an appellate court is not required to review issues unless they previously have been presented to the district court for determination. *See, e.g., Heckman Ranches, Inc. v. State*, 99 Idaho 793, 589 P.2d 540 (1979); *Ford v. Lord*, 99 Idaho 580, 586 P.2d 270 (1978).

Although these issues arguably were raised below—if the pleadings are generously interpreted—they were not supported by any factual showing or by the submission of legal authority. In short, they were not presented for decision. An appellate court is a forum of review; ordinarily, it does not adjudicate issues in the first instance. Accordingly, in this case we decline to consider the issues Lawhorn failed to present for determination at the district court level.

## II

We now shift our focus to the substantive issues. Before addressing each issue in detail, we note that summary judgment is appropriate only after the district court has determined that there are no genuine issues as to any material fact, and that the moving party is entitled to judgment as a matter of law. I.R.C.P. 56(c). The pleadings, depositions, and affidavits must be construed in a light most favorable to the party resisting summary judgment. *Barlow's, Inc. v. Bannock Cleaning Corp.*, 103 Idaho 310, 647 P.2d 766 (Ct.App.1982).

## A

■ The first substantive issue focuses narrowly upon a question of law. In the first summary judgment the district court awarded IBM prejudgment interest on the loan obligation. On appeal Lawhorn does not contest the court's computation of interest, but he does challenge IBM's right to receive any prejudgment interest at all. The loan agreement expressly provided that the loan was to be "at no interest cost." However, in construing such provisions for interest-free loans, our Supreme Court has drawn a bright line between two time periods: the time when use of the

money is authorized, and the time after the obligation has come due. In *Land Development Corp. v. Cannaday*, 77 Idaho 237, 290 P.2d 1087 (1955), the court examined a one-year promissory note which imposed no interest charge. The court said:

> Appellant assigns error of the trial court in allowing interest. True, the note, during its term of one year, does not provide interest on principal sum; but on and after the due date moneys in the sum of the principal became due. The trial court properly allowed interest on such principal sum due, at the legal rate ... from and after ... the maturity date of the note. [*Id.* at 243, 290 P.2d at 1091.]

The rule announced in *Cannaday* is also found in other jurisdictions. *See* cases cited in 45 AM.JUR.2d *Interest and Usury* § 69 at 63 n. 15–16 (1969). *Cf. Furness v. Park*, 98 Idaho 617, 570 P.2d 854 (1977) (no interest allowed where payment not due under contract, demand not made, and interest not prayed for in complaint); *Linford v. Hunsaker*, 92 Idaho 505, 446 P.2d 627 (1968) (no interest allowed where payments of principal made as scheduled). The *Cannaday* rule comports with common sense. A lender who agrees that money may be used interest-free has not thereby consented to forego interest after authority to use the money has expired. Such expiration occurs upon the due date of the note or loan agreement. Idaho Code § 28–22–104 prescribes the legal rate of interest on "[m]oney after the same becomes due," absent an express written contract fixing a different rate. Here, the IBM loan agreement provided that the money would become due upon any one of several alternative contingencies, including termination of employment. As noted earlier, Lawhorn was terminated. The circumstances surrounding that event are not at issue in this appeal. We hold that interest at the legal rate accrued upon the loan after Lawhorn was terminated. Judgment allowing such interest was correctly entered.

### B

The final issue presents a mixed question of law and fact. It concerns the enforceability of the alleged oral agreement for IBM to purchase the Idaho property. As noted, we view the record in a light most favorable to the party who resisted the summary judgment below. Accordingly, we accept as true a contention by Lawhorn that IBM, through an authorized official, did in fact orally agree to buy the property for the amount of Lawhorn's equity, if the property were not sold within nine months after he moved to his new assignment.

It is clear from the record that any such oral agreement would have conflicted with the loan agreement signed by Lawhorn and with the company's written employee "moving and living" policies. The only written policy of record, providing for IBM to purchase employee homes, is governed by criteria not satisfied in Lawhorn's circumstances. Consequently, the oral agreement must stand alone in its meaning and validity. As a matter of law, such an oral agreement is unenforceable under the Idaho statute of frauds. Idaho Code § 9–505(5) provides that an agreement for the sale of real property is invalid absent a note or memorandum signed by the party to be charged. The record in this case contains no such writing.

In some circumstances, an oral agreement may be removed from the strictures of the statute of frauds by part or full performance. This exception to application of the statute of frauds is grounded in equity. The exception protects a party who demonstrates reliance upon an oral contract by acts that would not have been done except for the contract. However, such reliance cannot be established by conduct referable to a cause other than the oral contract. *See Southern v. Southern*, 92 Idaho 180, 438 P.2d 925 (1968); *see generally* 73 AM.JUR.2d *Statute of Frauds* § 406 (1974). In this case, Lawhorn has made no particularized showing of acts done in reliance upon the oral agreement. It appears that he neither conveyed the property to IBM nor gave the company possession of it. Rather, Lawhorn simply asserts that he relied upon the

oral agreement when accepting his job transfer and taking out the home equity loan. However, such conduct on its face is no less referable to the loan agreement itself, and to company policies identified in the record, than to the oral agreement. No acts separately referable to the oral agreement have been demonstrated.

 Moreover, Lawhorn's claim of exception from the statute of frauds rests upon the doctrine of part performance. No claim of full performance was made or established below. Part performance, when established, yields an equitable remedy—specific performance of the oral agreement by the other party. *See, e.g., Hoffman v. S V Co.*, 102 Idaho 187, 628 P.2d 218 (1981); *Tew v. Manwaring*, 94 Idaho 50, 480 P.2d 896 (1971); *Haskin v. Glass*, 102 Idaho 785, 640 P.2d 1186 (Ct.App.1982).

However, specific performance is not the remedy sought by Lawhorn in his counterclaim. Rather, he has prayed for damages, allegedly caused by the company's failure to buy the property, in a sum of $200,000 —a figure bearing no apparent relationship to his equity in the property. The record further shows that after Lawhorn's employment was terminated, the company offered to buy the Idaho property, based either upon its appraised value when the loan was made or upon an updated appraisal. Lawhorn declined. It is clear that Lawhorn does not seek by his counterclaim to enforce a sale of the property to IBM. Because the doctrine of part performance would yield a remedy unsuited to the purpose for which the doctrine is urged in this case, we decline to apply it. We conclude that the district court properly rejected Lawhorn's counterclaim for breach of an oral agreement to purchase the real estate.

The judgments of the district court, allowing IBM to recover on its complaint and rejecting Lawhorn's counterclaim, are affirmed. Costs to respondent, IBM.

WALTERS, C.J., and SWANSTROM, J., concur.