681 P.2d 1010

**BOB DANIELS AND SONS, a co-partnership consisting of Bob Daniels, Don Daniels and Merlin Daniels, Plaintiffs, Counter-defendants, Appellants,**

v.

**William H. WEAVER and Vicki L. Weaver, husband and wife, Defendants, Counter-plaintiffs, Respondents.**

No. 14422.

Court of Appeals of Idaho.

March 30, 1984.

Rehearing Denied May 25, 1984.

Petition for Review Denied
Aug. 8, 1984.

538

John K. Gatchel and Stephen C. Batt (Gatchel & Batt), Payette, for plaintiffs, counter-defendants, appellants.

James S. Underwood, Jr. and Dennis R. Petersen, Boise, for defendants, counter-plaintiffs, respondents.

BURNETT, Judge.

Few things are as certain as death, taxes and the legal entanglement that follows a sale of landlocked real estate. This case focuses upon such a sale. The property in question, part of a larger tract owned by Bob Daniels and Sons, was sold to William and Vicki Weaver under an installment contract. The property had no access of record, and the contract was silent regarding access. After paying two annual installments, the buyers directed an escrow agent not to deliver a third payment to the sellers until access had been furnished through the sellers' remaining land. The sellers sued for breach of contract. The buyers counterclaimed for access upon the alternate theories that the parties orally had agreed upon an easement across the sellers' land, or that such an easement should be implied in law. The district court, in a summary judgment, held that the buyers had not breached the contract

and that they were entitled to an implied easement. The sellers have appealed.

We are asked to decide (1) whether the buyers could impose, as a condition of delivering payment, a demand that the sellers perform a duty not required by the installment contract; (2) whether the buyers have made a factual showing sufficient to create a genuine issue concerning existence of an oral agreement; and (3) whether the record is adequate to determine that the requirements for an implied easement have been met. For reasons explained below, we answer each question in the negative. Accordingly, we reverse the summary judgment and remand for further proceedings.

I

We first consider whether the buyers breached the contract by making access a condition to delivery of a payment. This condition was set forth by letter from the buyers' attorney to an escrow holder. The letter enclosed a payment but said "[t]his sum is being conveyed to you, in trust, so that the purchasers will not be in default in their payments." The letter asserted that the sellers had violated an unspecified agreement to provide access. It instructed the escrow holder not to deliver the payment to the sellers until the problem had been "worked out." The escrow holder complied, later informing the district court that it was holding the money in a trust account "until instructed by [the purchasers] as to what disposition to be made [sic] of said funds."

A

The district court decided that the buyers' conditional payment was permissible in view of the escrow instructions. Those instructions, contained in an instrument separate from the installment contract, stated that "as an inducement" for the escrow holder to accept the escrow, the holder would be entitled "in the event of a disagreement between the parties ... [to] make no delivery ... of any money ... and not be or become liable to the parties." In our view, the district court erred by relying upon the escrow instructions to determine whether the installment contract had been breached.

We believe the instructions in this case could not be construed to permit the buyers unilaterally to impose conditions upon installment payments, absent agreement by the parties themselves that conditional payments were acceptable. The instructions did not specifically authorize conditional payments. They established the escrow holder's rights and duties in relation to the other parties, not the rights and duties of the sellers and buyers between each other. The latter rights and duties were set forth in the installment sale contract. In contrast, the escrow instructions contained clauses defining the escrow holder's responsibilities and compensation. The quoted provision, permitting the escrow holder to refuse to act, was inserted for its own protection.

Moreover, one party to a real estate contract cannot make the escrow holder his agent exclusively, to the detriment of the other party. *Foreman v. Todd*, 83 Idaho 482, 364 P.2d 365 (1961). Here, the buyers' instruction to hold a payment "in trust" for them was inconsistent with the escrow holder's duties as a neutral depository under the escrow instructions. Both parties must consent if the escrow holder is to act contrary to prior instructions. *Brinton v. Lewiston National Bank*, 11 Idaho 92, 81 P. 112 (1905). Therefore, we hold that the escrow instructions in this case do not govern the question whether the conditional payment constituted a breach of the installment contract.

B

We turn instead to the contract itself. The buyers were required to make payments at specific annual intervals. Failure to perform when performance was due would constitute a breach of the contract. RESTATEMENT (SECOND) OF CONTRACTS § 235 (1981) (hereinafter cited as Restatement). Of course, the buyers' duty to pay was conditioned upon the lack

of any uncured material failure by the sellers to render performance due at an earlier time. Restatement § 237. However, this condition would apply only to the sellers' performance of a duty under the contract. It would not apply to performance required under a separate agreement. Restatement § 237, comment e.

Thus, in *Blinzler v. Andrews*, 94 Idaho 215, 485 P.2d 957 (1971), the tender of a payment conditioned upon the delivery of title insurance was not treated as a breach, because the contract itself obligated the vendor to furnish title insurance. Conversely, in *Barker v. McKellar*, 50 Idaho 226, 296 P. 196 (1930), the seller deposited a deed into escrow with instructions to deliver the deed to the purchaser only upon payment of the contract price. The court held that such conditional tender of the deed was insufficient performance because there was no provision for an escrow in the underlying contract. *See also Associated Developers Co. v. Infanger*, 85 Idaho 158, 376 P.2d 496 (1962).

■ In this case, as noted, the installment sale contract was silent about access. It imposed upon the sellers no duty beyond conveying acceptable title, allowing quiet possession during the contract term, and providing title insurance. The sellers deposited in escrow a deed that said nothing about access or an easement. They furnished a title insurance commitment specifically noting the lack of access and excluding access from the coverage of the policy. The record discloses, without dispute, that the buyers made no objection to the sellers' performance. Accordingly, we deem it clear that the purchasers, by instructing the escrow agent to hold the payment until the access problem was resolved, conditioned their performance upon the sellers' performance of a duty not provided in the installment contract. The buyers' action would represent a breach, unless the installment contract represented only part of the total agreement between the parties and was supplemented by a prior or contemporaneous oral provision for access. We now turn to that question.

## II

■ The district court made no determination that an oral agreement existed. Such agreement is not urged by the purchasers in their brief on appeal. Nevertheless, in summary judgment proceedings, an appellate court might affirm a decision of the lower court upon a theory different from that upon which the lower court relied. The appellate court can determine from the record whether there is a genuine issue as to any fact material to the application of the alternate theory. *See* 10 C. WRIGHT, A. MILLER & M. KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2716 (1983).

■ In this case, summary judgment was sought by both parties. Where the opposing parties have moved for summary judgment based upon the same evidentiary facts, and same theories and issues, they effectively have stipulated that there is no genuine issue of material fact. *Riverside Development Co. v. Ritchie*, 103 Idaho 515, 650 P.2d 657 (1982). The question then becomes whether the party seeking relief upon a particular theory has made a sufficient factual showing in support of that theory. Thus, our inquiry is whether the record before us discloses a genuine issue of material fact concerning the existence of an oral agreement. I.R.C.P. 56(c).

### A

This question is framed by the pleadings and affidavits submitted by the parties. In an unverified counterclaim the buyers simply alleged that the sellers, at some time prior to the counterclaim, had agreed to grant ingress and egress over their retained land. Answering this general contention, the sellers filed detailed affidavits. The sellers stated that when they transacted the sale of the subject property, they dealt not with the Weavers but with a co-purchaser who—together with his spouse—subsequently assigned all interest in the property to the Weavers. This individual, declared the sellers, was fully informed that no access existed or was prom-

ised with respect to the subject property. The individual indicated that he would arrange access from an alternate source. Upon these particular facts, the sellers denied that an oral agreement concerning access had been reached when the sale was consummated. The sellers acknowledged that there had been contacts with the Weavers after the sale, but denied that these contacts had resulted in a subsequent oral agreement for access.

In response to these specific affidavits, the buyers submitted an affidavit which broadly recited that Mr. Weaver had "attempted to work out an easement" but that the sellers had refused to provide access. The affidavit also said that Mr. Weaver had been "advised by the [sellers] that if access was not available on one side of the property ... [sellers] would grant an easement for access through their retained property." The affidavit did not specify when this "advice" was received, in relation to the sale, nor did it describe the easement allegedly promised. The affidavit added that Mr. Weaver "has always believed that he was legally entitled to an access regardless of contract or representations."

■■■■ In our view, the buyers' affidavit does not create a genuine issue concerning the existence of an oral agreement when the sale occurred. In summary judgment proceedings, a party may not rely upon general or conclusory allegations, unsupported by specific facts. *Barlow's, Inc. v. Bannock Cleaning Corp.*, 103 Idaho 310, 647 P.2d 766 (Ct.App.1982). Conversely, in order to prevent the entry of summary judgment against him, a party must make a showing with factual details of specificity equal to those furnished by his opponent. *Vincen v. Lazarus*, 93 Idaho 145, 456 P.2d 789 (1969). In this case, the buyers have not controverted the sellers' specific averments that no oral agreement concerning access existed at or before the time of sale. We conclude that the installment contract was not supplemented by a contemporaneous oral agreement for the sellers to provide access across their retained property. Such a duty, if it existed

at all, could have arisen only from a subsequent, separate oral agreement. As noted earlier, one party to a contract may not condition his performance upon the other party's performance of a duty provided in a separate contract. Therefore, we hold that the buyers' conditional payment represented a breach of the installment contract. The sellers are entitled to judgment upon their complaint.

**B**

The proper remedy to be embodied in the judgment has not been raised as an issue in this appeal. However, we note that in the complaint commencing this lawsuit, the sellers sought a judgment for the accelerated balance due on the contract. In the event that such relief is granted—and if the buyers are able to satisfy the judgment—they will receive title to the property. Consequently, we still must consider whether the buyers are entitled to an easement under a subsequent oral agreement.

■■■■ Reading the buyers' affidavit most favorably to them, it creates a genuine issue that an oral promise was made, after the sale, to provide an easement if other access could not be obtained. However, the affidavit discloses no consideration for this promise; nor does it specify the location and dimensions of the easement. The promise, even if made as alleged, lacks the mutuality of obligation necessary to establish a contract; and it is too indefinite to be enforced. *See generally, e.g., Dale's Service Co. v. Jones*, 96 Idaho 662, 534 P.2d 1102 (1975); *Thomas v. Cate*, 78 Idaho 29, 296 P.2d 1033 (1956).

■■■■ Moreover, easements are interests in real property. Idaho Code § 9–505(5) (the "statute of frauds") provides, with exceptions not applicable here, that interests in real property must be transferred by written instrument. An oral agreement must be evidenced by a written memorandum. No such memorandum appears in this record. Failure to comply with the statute renders an oral agreement unenforceable both in law and in equity. *E.g.,*

*Hoffman v. S V Co.*, 102 Idaho 187, 628 P.2d 218 (1981). An easement established by unwritten agreement is merely a license, revocable by the licensor. *Howes v. Barmon*, 11 Idaho 64, 81 P. 48 (1905).

Of course, an oral agreement may be removed from the strictures of the statute of frauds by part or full performance. However, such performance must relate to the oral agreement and may not be referable to another cause, such as the rights and duties provided by a separate written contract. *International Business Machines Corp. v. Lawhorn*, 106 Idaho 194, 677 P.2d 507 (Ct.App.1984). In this case, no payment of additional consideration or other performance by the purchasers, referable solely to the alleged oral agreement, has been shown. Consequently, we conclude that the buyers are not entitled, under any oral agreement, to an easement across the sellers' remaining property.

### III

We turn finally to the question whether the buyers are entitled to an easement implied in law. In the summary judgment below, the district court ruled that the buyers should receive an easement "of necessity by implication." This language is confusing. Idaho's case law recognizes two types of easements implied in law: easements by implication and easements by necessity. *See Cordwell v. Smith*, 105 Idaho 71, 665 P.2d 1081 (Ct.App.1983). Both types of implied easements arise from the division of an original tract of land into two or more parcels. Such easements are founded on the view that "lands should not be rendered unfit for occupancy or successful cultivation" by a lack of access. *Burley Brick & Sand Co. v. Cofer*, 102 Idaho 333, 335, 629 P.2d 1166, 1168 (1981) *quoting from* 17A AM.JUR. *Easements* § 58, p. 668. *See also Close v. Rensink*, 95 Idaho 72, 501 P.2d 1383 (1972).

An easement by implication requires a showing of (1) unity of title and subsequent separation by grant of the dominant estate; (2) apparent continuous use of an access; and (3) reasonable necessity for an easement. *Cordwell*, 105 Idaho at 77, 665 P.2d at 1087. An easement is implied under this doctrine because it is presumed that if an access was in use at the time of severance, such use was meant to continue.

In contrast, an easement by necessity requires (1) unity of ownership prior to division of the tract; (2) necessity of an easement at the time of severance; and (3) great present necessity for the easement. *Id.* at 79, 665 P.2d at 1089. Under this doctrine, great necessity—rather than reasonable necessity—must be established, because without prior continuous use of an access, there could be no presumption that the vendor intended the access to continue after severance. If the necessity for the easement is great, public policy will imply an easement. However, an easement by necessity continues only as long as the need exists. Therefore, great present necessity, as well as necessity at the time of severance, must be shown. An easement by necessity must not be granted if there is an alternate access, though it be expensive or inconvenient. "Substantial inconvenience [to the buyers] may be an important factor, but it must be weighed against the inconvenience and possible damage that could result to the [sellers] as a result of imposing an easement across their property." *Id.* at 81, 665 P.2d at 1091.

In this case, it is undisputed that no roadway across the sellers' original tract, connecting the buyers' property to the sellers' remaining property, existed at the time of severance. Therefore, if the district court intended in its summary judgment to grant an easement by implication, such a grant was in error. The requirement of continuous use has not been satisfied.

The remaining possibility is an easement by necessity. The first requirement for this type of easement—unity of title and subsequent severance—is satisfied beyond dispute. However, the other requirements—necessity for an easement at

the time of severance, and great present necessity, are not specifically addressed in the parties' affidavits. The buyers simply state that "there is no access from the highway to the real property that is the subject of this action." The sellers obliquely mention "possible access by way of Sand Hollow road, but that the same had locked gates across it." The sellers' affidavits also refer to "an attempt by the buyers or their agents to bulldoze a roadway for access across a third person's property." This record is sufficient only for us to determine that genuine issues of material fact exist regarding necessity for the easement at severance and concerning great present necessity. Neither party has demonstrated as a matter of law that an easement by necessity should, or should not, be granted. We conclude that the case must be remanded for further proceedings on this issue.

To summarize, the judgment of the district court, holding that the buyers did not breach the installment contract, is reversed. The district court is directed to enter judgment in favor of the sellers on their complaint. The court shall determine the appropriate remedy for the breach and so provide in the judgment. If the court enters judgment for the accelerated balance of the contract, and if such judgment is satisfied, then the court shall determine whether the buyers are entitled to an easement of necessity across the sellers' remaining land.

Costs in this appeal are awarded to the sellers. We further note that the installment contract entitles the prevailing party to an award of attorney fees. The sellers have prevailed in litigation on the contract. We award them attorney fees on appeal, in an amount to be determined in conformance with I.A.R. 41(d). Buyers' counterclaim for access, including an easement by necessity, falls outside the contract. Genuine issues concerning the counterclaim have been presented. We are not left with the abiding belief that the appeal, as to those issues, was brought, pursued or defended frivolously, unreasonably or with-

out foundation. *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 591 P.2d 1078 (1979). Therefore, we decline to award attorney fees on appeal to either party in connection with the counterclaim.

WALTERS, C.J., and SWANSTROM, J., concur.

## ON DENIAL OF PETITION FOR REHEARING

BURNETT, Judge.

Our principal opinion holds that the buyers of real property breached a contract by causing an escrow agent to cease delivering payments to the sellers during a dispute over access to the property. We also instructed the district court on remand to determine, if necessary, whether the buyers might be entitled to access through an easement by necessity. In a petition for rehearing, the buyers now contend that if such an easement were found to exist, it would signify that the sellers had committed an antecedent breach of the land sale contract—excusing buyer's subsequent breach—by refusing to recognize the easement from the outset. We disagree.

As the principal opinion states, the buyers purchased land without access of record. The contract contained no provision for access. An easement by necessity, if one exists in this case, is not a creature of contract; it is a creature of public policy. Such an easement arises independently from any contract and may even thwart the intent of the sellers or purchasers. *See* 2 G. THOMPSON, COMMENTARIES ON THE MODERN LAW OF REAL PROPERTY § 362 (5th ed. 1980). The sellers' failure to recognize an access right outside the contract cannot logically be treated as a breach of the contract.

The buyers complain that our opinion puts them in the tenuous position of paying the balance owed on the contract without assurance of ultimately obtaining an easement. However, our opinion simply holds the buyers to their bargain. They will receive just what the contract gives them—

land without access of record. They also will receive what the law gives them—a chance to demonstrate an entitlement to an easement by necessity.

The buyers further contend that an easement is contemplated by the contract's covenant of quiet enjoyment. If this argument is meant to suggest that an easement was intended by the parties, it relates to an easement by implication rather than to an easement by necessity. An easement by implication, by its name, denotes an access impliedly intended by the parties. The specific elements of an easement by implication have been enunciated, and found lacking, in our principal opinion. On the other hand, if the buyers' argument is meant to suggest a contractual link between quiet enjoyment and an easement by necessity, we believe the argument is conceptually unsound. Quiet enjoyment may depend upon access, but not invariably upon seller-furnished access. Moreover, to say that a covenant for quiet enjoyment contains a latent easement by necessity would be to expand the contract ex post facto. It would put the sellers at risk of being held in breach of contract for failure to honor an easement not bargained for and not provided in the contract itself, but later decreed by a court upon grounds of public policy. We decline to so modify the contract.

We have examined the other contentions in the petition for rehearing and find them to be unpersuasive. Consequently, the petition is denied.

WALTERS, C.J., and SWANSTROM, J., concur.